Commonwealth *v.* Alvarado, Appellant.

Argued November 30, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*David N. Savitt,* with him *John Patrick Walsh,* for appellant.

*Mark Sendrow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

518

OPINION BY MR. JUSTICE ROBERTS, April 22, 1971:

On June 2, 1966, appellant Julio Alvarado pleaded guilty to an indictment charging him with rape and murder. Following a degree of guilt hearing, a three-judge panel found the homicide to be murder in the first degree and sentenced him to death. On January 14, 1970, Alvarado's petition for leave to withdraw his guilty plea was denied, and the present appeal followed.

The Commonwealth concedes that the prosecutor assigned to try Alvarado's case promised not to seek the death penalty in return for a guilty plea. In urging that he is now entitled to withdraw that plea, Alvarado contends that the prosecutor's promise was not kept and that he was denied the effective assistance of counsel.

## I

In support of the ineffective counsel claim, we are referred to counsel's failure to object at the degree of guilt hearing to the introduction into evidence of certain gruesome and inflammatory photographs of the victim's body and to our holding in *Commonwealth v. Powell*, 428 Pa. 275, 241 A. 2d 119 (1968), that such inflammatory photographs are not admissible unless of "essential evidentiary value". Id. at 278, 241 A. 2d at 121. However, the degree of guilt hearing in the instant case took place two years prior to *Powell*, at a time when counsel might have reasonably believed that any objection would have been futile. See, e.g., *Commonwealth v. Dickerson*, 406 Pa. 102, 176 A. 2d 421 (1962). We therefore cannot conclude that counsel's decision not to object to the introduction of the photographs was without "some reasonable basis" designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A. 2d 349, 352 (1967). See also *Commonwealth v. Woody*, 440 Pa. 569, 271 A. 2d 477 (1970); *Commonwealth v. Skipper*, 440 Pa. 576, 271 A. 2d 476 (1970).

The only other alleged ineffectiveness is counsel's failure to inform the court, prior to its acceptance of Alvarado's plea, of the prosecutor's promise not to seek the death penalty. It is undoubtedly the much better practice for the court to be made aware of the existence and nature of any plea bargain prior to the plea itself. See ABA Project on Minimum Standards for Criminal Justice, Pleas of Guilty §1.5, Commentary (Approved Draft 1968); Note, 112 U. Pa. L. Rev. 865, 894-95 (1964). The potential benefits of disclosure are substantial. The court would be on notice to instruct the possibly confused defendant that the prosecutor's recommendation or lack of recommendation is in no way binding on the court. Moreover, an on-the-record disclosure of the plea bargain would serve both to protect the defendant in the event that the prosecutor does not subsequently abide by the plea bargain and to protect the Commonwealth against later false claims of unkept bargains. *People v. West,* 3 C. 3d 595, 91 Cal. Rptr. 385 (1970). We are not at this time, however, disposed to fashion a rule that counsel's failure to disclose a plea bargain per se constitutes ineffective assistance of counsel. In the instant case, there is ample indication that Alvarado understood that the court might not be swayed by the prosecutor's failure to seek the death penalty, and the Commonwealth admits the existence of the promise not to seek the death penalty. Absent any demonstrable prejudice, counsel's silence respecting the plea bargain did not in itself render his assistance of Alvarado constitutionally defective.

We wish to emphasize, however, that we will in the future expect defense counsel to see to it that the court is made aware of the existence and terms of any plea agreement. This responsibility is, of course, shared concurrently by the prosecutor and by the court itself. In this regard, we are in substantial accord with the American Bar Association's recommended standard. "The

court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. By inquiry of the prosecuting attorney and defense counsel, the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and, if it is, what agreement has been reached. If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court. The court should then address the defendant personally and determine whether any other promises or any force or threats were used to obtain the plea." ABA Project on Minimum Standards for Criminal Justice, Pleas of Guilty §1.5 (Approved Draft 1968).

## II

In *Commonwealth ex rel. Kerekes v. Maroney,* 423 Pa. 337, 223 A. 2d 699 (1966), this Court expressly indicated that plea bargaining is in general a permissible device, frequently serving the best interest of both the Commonwealth and the accused. Thus we turn to Alvarado's remaining contention that the Commonwealth did not abide by the plea bargain, and in this claim we find much merit.* The record discloses that the prose-

---

* Before discussing the plea bargain issue, we wish to make clear that we in no way condone appellant's negative responses to the court's careful and explicit questions concerning whether any representations or promises had been made to him in return for his plea of guilty. If appellant misled the court of his own volition, we would be most hesitant to grant any relief. If, however, appellant's negative answers were "coached" by his counsel, he should not be made to suffer because of counsel's questionable advice. Furthermore, as set out in part I of this opinion, the conspiracy of silence respecting the plea bargain extended even to the prosecutor who sat idly by while the court was misinformed. concerning the circumstances attending appellant's decision to plead guilty.

cutor never specifically urged or expressly recommended the death penalty. But neither did he stand mute. When asked by the court whether he had any comments to offer on the question of sentence, he replied that he had and proceeded to make a series of statements, including the following: "During the course of the testimony that the Commonwealth presented, there was testimony that this defendant helped carry the stretcher containing the victim down the stairs, and at that time before the testimony came in I think your Honors felt that this was an act of mercy showing that this was remorse or sorrow. Later through all the testimony we found that this was not an act of remorse, but was part of the actions which this man undertook calculated to deceive the family and his friends. He had given the story and the information of the 3 men that he saw. He didn't beg the family for forgiveness or for mercy, but he came back specifically to try to fall (sic) and deceive and send the police out on a false track. The purpose (sic) we are here today is to judge a man. *What kind of man is he? Is he showing this Court any remorse? Has he begged this Court for mercy himself? He has had nothing to say. Would he show any mercy to this girl? . . .*" (Emphasis added.) ". . . In conclusion, your Honors, I would just say that in your discretion in deciding what the penalty should be in this case the question should be asked *have you ever observed in your experience, have you ever seen a crime as vicious as this one has been? Can you ever forget the pictures you saw?* From the pictures I think the Commonwealth could show a specific intent to kill in this case." (Emphasis added.)

The Commonwealth would dismiss the above references as a mere vigorous "review of the evidence". That may be so—but a review for what purpose? These statements were made *after* Alvarado had already been found guilty of first degree murder and there remained to be

decided only whether his punishment should be life imprisonment or death. See Act of June 24, 1939, P. L. 872, §701, as amended, 18 P.S. §4701. Consequently, the only conceivable purpose of the references to the brutal nature of the crime and to Alvarado's apparent remorselessness was to persuade the court to assign the harsher of the two possible penalties.

It is of course possible that the prosecutor may have intended to promise only that he would not *explicitly* urge the death penalty. However, the prosecutor's subjective understanding of his promise is immaterial. To determine the content of a plea bargain we must consider what the defendant might have reasonably interpreted it to be. Cf. *In re Valle,* 364 Mich. 471, 477-78, 110 N.W. 2d 673, 677 (1961). Here, Alvarado might have reasonably believed that the prosecutor's promise not to seek the death penalty included a commitment not to make any damning or even potentially damaging statements at the time of sentencing. As so interpreted, that promise was clearly violated.

We are brought then to the question of remedy. The majority of jurisdictions that have faced this issue permit the withdrawal of a guilty plea when the prosecutor violates a plea bargain. See, e.g., *White v. Gaffney,* 435 F. 2d 1241 (10th Cir. 1970); *People v. Fratianno,* 6 Cal. App. 3d 211, 85 Cal. Rptr. 755 (1970); *State v. Wolske,* 280 Minn. 465, 160 N.W. 2d 146 (1968); *People v. Sigafus,* 39 Ill. 2d 68, 233 N.E. 2d 386 (1968); *State v. Reppin,* 35 Wis. 2d 377, 151 N.W. 2d 9 (1967); *Darnell v. Timpani,* 68 Wash. 2d 666, 414 P. 2d 782 (1966); *Zaffarano v. United States,* 306 F. 2d 707 (9th Cir. 1962); *People ex rel. Valle v. Bannan,* supra; *State v. Hovis,* 353 Mo. 602, 183 S.W. 2d 147 (1944). See also ABA Project on Minimum Standards for Criminal Justice, Pleas of Guilty §2.1(a)(ii) (4) (Approved Draft 1968); cf. ABA Project on Standards for Criminal Justice, The Prosecution Function

and the Defense Function, The Prosecution Function §4.3 (Tent. Draft 1970). There exists, however, a minority rule which does not permit the withdrawal of the plea but instead gives the defendant the benefit of the bargain by modifying his sentence in accordance with the prosecutor's promise. *People v. Chadwick*, 33 A.D. 2d 687, 306 N.Y.S. 2d 182 (1969); *People v. Keehner*, 28 A.D. 2d 695, 281 N.Y.S. 2d 128 (1967). *Courtney v. State*, 341 P. 2d 610 (Okla. Crim. App. 1959); *Harjo v. State*, 70 Okla. Crim. App. 369, 106 P. 2d 527 (1940). Finally, in at least two instances courts have given a defendant the option of either withdrawing his plea or accepting a modification of his sentence in accordance with the plea bargain. *People v. Farina*, 2 A.D. 2d 776, 154 N.Y.S. 2d 501 (1956); *United States v. Graham*, 325 F. 2d 922 (6th Cir. 1963).

While not expressing any opinion as to the possible general preferability of the majority rule, we believe that in the particular circumstances of this case the appropriate disposition is to modify Alvarado's sentence to life imprisonment rather than to allow withdrawal of his guilty plea. Cf. *Commonwealth v. Green*, 396 Pa. 137, 151 A. 2d 241 (1959); *Commonwealth v. Irelan*, 341 Pa. 43, 17 A. 2d 897 (1941); *Commonwealth v. Garramone*, 307 Pa. 507, 161 Atl. 733 (1932). As the Commonwealth did not breach any promise until *after* Alvarado had been found guilty of murder in the first degree, a life sentence rather than death was the *most* benefit he could have derived from fulfillment of the prosecutor's promise. No consideration of fairness or sound judicial administration dictates that he now be given an opportunity to withdraw his plea, stand trial, and possibly escape criminal liability altogether.

Accordingly, as this Court unanimously instructed in *Commonwealth v. Aljoe*, 420 Pa. 198, 216 A. 2d 50 (1966), the record is remanded to the trial court with

directions to vacate the death penalty and to sentence Alvarado to life imprisonment.

Mr. Justice COHEN took no part in the decision of this case.