## Commonwealth *v*. Wright, Appellant.

Argued April 26, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Henry J. Lunardi,* with him *Sadie T. M. Alexander, A. Charles Peruto,* and *Lorch, Ryan, Peruto & Vitullo,* for appellant.

*James D. Crawford,* Deputy District Attorney, with him *Brian E. Appel,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 12, 1971:

Appellant, Boise Wright, with two others, Marion Wilson and Robert McSwain, was charged with having murdered one Wakefield Conway, Jr., during an alleged robbery on a street in Philadelphia. The incident occurred on Christmas night, December 25, 1964. During the perpetration of the robbery, Conway was stabbed six times and was dead by the time police arrived shortly after the occurrence.

The incident was witnessed by four young persons, ranging in age from nine to fourteen, who were walking on the opposite side of the street when the attack occurred. They testified that: three youths surrounded the deceased; one of the three repeatedly stabbed the victim with a shiny-bladed knife; the victim fell to the ground; one of the three put his hands in the victim's pocket and placed one of his hands back into his own pocket; all three ran south and turned into an alley.

Two of the four eyewitnesses, eleven-year-old Emma Holiday, and her cousin, Cynthia Jackson, of the same age, unequivocally identified appellant as one of the three participants. The facts of the incident are set out at length in *Commonwealth v. Wilson,* 431 Pa. 21, 244 A. 2d 734 (1968).

Appellant took the stand and testified that he did not participate in the robbery of Conway and that he was not present at the time of the stabbing. He stated that he, Robert McSwain and Marion Wilson were in the company of four other teenagers at the time in

question, Dorothy Wilson, her boyfriend, and the Guyton brothers. None of these witnesses was called by the defense.

Concerning the appellant's failure to produce any of his alibi witnesses, the trial judge, at the request of the Commonwealth, charged the jury as follows:

"I have been asked to discuss with you very briefly that there are other people who apparently were brought into the scene by the defendant as having been there with him or near him or in close proximity to where he was on the day that this occurrence took place. The name of Dorothy Wilson was brought out. The name of Nathaniel, her boyfriend, was introduced, as well as the two Guyton brothers. Dorothy Wilson was not called by the defendant to shed some light on what happened as far as the movements of the defendant are concerned on the day of the incident, nor was Nathaniel, who, the defendant said, was with Dorothy Wilson and he [sic] and Robert and Marion on the day of the occurrence. He was not brought into this Courtroom to furnish you with anything as to what he knew of the presence or lack of presence or the movements of the defendant at the time that this incident occurred.

"Neither of the Guyton Brothers were [sic] brought into this case until I called upon Albert Guyton to testify, as a result of a subpoena that had been issued. You ask yourselves why weren't these witnesses brought to testify in this case."

According to appellant this charge nullified the presumption of innocence.

Appellant's argument rests on the law as stated in *Commonwealth v. Miller*, 205 Pa. Superior Ct. 297, 208 A. 2d 867 (1965), where the court reversed after the trial judge advised the jury that it could consider the fact that the defense made no attempt to defend the accused by witnesses.

The court held that this was fundamental error because: ". . . [A defendant] is under no duty to take the stand or produce evidence of his innocence but may stand mute protected by the presumption of innocence and demand that the Commonwealth sustain its burden of proving his guilt beyond a reasonable doubt. With this charge the jury may draw an adverse inference from the defendant's failure to produce evidence and, in effect, treat it as circumstantial evidence of guilt which, together with the Commonwealth's evidence could convince the jury beyond a reasonable doubt." However, the situation in *Miller* is very different from the situation in the instant case. In *Miller,* the defendant chose not to testify and he did not mention the existence of any missing witnesses. In the instant case, appellant referred to four witnesses, who he testified were with him during the time the crime was committed. None was called to testify by either side until the trial Judge directed that one of the brothers be brought into court.

Thus, the question at issue is very different from *Miller.* In *Miller,* the question was whether the fact of a failure of a defendant to produce witnesses can be used to rebut the presumption of innocence. Here, the question is whether, after the defendant raises the defense of an alibi and names witnesses who can support him, if those witnesses are not produced and there is nothing to indicate that they could not have been produced, is it permissible for a jury to infer that if these alleged witnesses had been produced, their testimony would not have been favorable to the defendant.

The Commonwealth would have us avoid this question. It argues that it is clear that the jury was in no way instructed to make adverse inferences only to the defendant. With this we cannot agree. The jury knew which party asked for the charge, they knew

which party objected. There can be no doubt that if inferences adverse to anyone were to be made from the failure to call the witnesses, these inferences would be adverse to the defendant.

So we must face the question. If a defendant raises an alibi and testifies as to the existence of named alibi witnesses who know him personally, and if these witnesses are not called, is it fair for the jury to infer that their testimony would be adverse to the defendant?

We hold that such an inference should be permitted.

This issue has been faced by courts in Pennsylvania before, as recently as *Commonwealth v. Bruce*, 433 Pa. 68, 249 A. 2d 346 (1969). See also *Commonwealth v. Trignani*, 185 Pa. Superior Ct. 332, 138 A. 2d 215 (1958), affirmed, 393 Pa. 140, 142 A. 2d 160 (1958), each time with the same result.

Since the inference *is* permissible, it would have been error for the court to instruct the jury the other way, i.e., that the failure to call the named witnesses could *not* be considered in evaluating the credibility of appellant's alibi. Consequently, even though the inference is *only* permissible, courts are permitted to comment on the possibility of drawing such an inference just as courts are permitted to comment on every other factor which a jury is permitted to consider.

However, we must emphasize, at this point, that while it is permissible for a jury to draw adverse inferences as to the credibility of a defendant's alibi from his failure to call persons he identifies as eyewitnesses, such inferences are not mandatory. Furthermore, such inferences do not affect the presumption of innocence. The Commonwealth must still prove that the defendant committed the crimes alleged beyond a reasonable doubt.

Admittedly, if the jury chooses to draw an adverse inference from a defendant's failure to call named alibi

witnesses, his case may be affected because his alibi is not believed. But the credibility of defendant's testimony is always something which he must consider before he takes the stand.

Nevertheless, since any inferences to be drawn are permissible, not mandatory, if a court chooses to charge on this issue, it must be careful not to overemphasize it so as to mislead the jury into believing the inference to be mandatory rather than only permissible.

Although the court's initial charge did not really make this clear, we need not decide whether that fact alone entitles appellant to a new trial. After the jury began its deliberations, the Commonwealth requested additional instructions on the point.[1] The court then charged as follows:

"Members of the jury, I have been requested by the District Attorney to present this additional charge to you on the law. When the testimony discloses that there are witnesses available to a defendant whose evidence would tend to exculpate him if they were present, and he fails to call such witnesses or explain their absence, the jury may infer from the failure to call them that they would not exculpate him if he called them. The unexplained absence of a witness available to a party whom that party fails to call may

[1] The chronology of events in connection with the deliberations of the jury is as follows: (1) On February 1, 1966, at 8:30 p.m., the jury retired for deliberations; it returned to the courtroom at 11:15 p.m., without having reached an agreement. At 11:30 p.m. the jury continued to deliberate until 12 Midnight, without reaching an agreement. (2) On February 2, the jury deliberated from 11:00 a.m., until 12:15 p.m.; and from 1:55 p.m. until 5:00 p.m. From 7:40 p.m. until 8:00 p.m. it heard additional instructions from the trial judge. From 8:00 p.m. until 10:10 p.m. the jury again deliberated without reaching an agreement. (3) on February 3, the jury deliberated from 10:00 a.m. until 11:20 a.m.; from 11:26 a.m. until 12:30 p.m.; and from 2:00 p.m. until 4:50 p.m., when a verdict of guilty was returned.

be considered by the jury together with all the other evidence in the case in determining the guilt or innocence of the defendant. There were three names mentioned during the progress of the defendant's case, Dorothy Wilson, her boyfriend Nathaniel, and James Guyton. Those persons were mentioned as having been close to the scene immediately before or perhaps after the incident. You ask yourselves why were they not called. Dorothy Wilson was one who was supposed to have called the attention of those in the Wilson house to the fact that there was a man down the street who had been hurt.

"The Guyton boys, including the one who was not called, and Nathaniel, in addition to Dorothy, were supposed to have been on that street near Somerset Street sometime before the crime was committed. You ask yourselves why were they not presented. There was no explanation given for their absence."

Appellant argues that when the Judge gave the jury these additional instructions which they had not sought, it amounted to coercion. We agree. Even though the judge prefaced the additional instructions with the explanation that they were given at the request of the district attorney, calling the jury away from its deliberations for additional discussion on the one issue was bound to heighten the importance of that issue in the minds of the jurors, thus subtly coercing them to make the inferences which the Commonwealth wanted them to make, even though they were not required to do so.

Our whole jury system is predicated on a belief that a jury can be relied upon to perform its function by considering all of the facts and the applicable law in a diligent and conscientious manner. In the instant case, the Commonwealth was not satisfied to have the court instruct the jury as to an inference it could prop-

erly draw, and in its common sense probably would have considered, even if it had not been mentioned specifically. Instead, the Commonwealth asked for repeated instructions so that what was only a permissible inference might take on the appearance of a mandatory one. When a court calls a jury back for additional instructions which it did not request, such instructions are bound to have a coercive effect.

Judgment reversed and case remanded for new trial.

DISSENTING OPINION. BY MR. CHIEF JUSTICE BELL:

I find no abuse of discretion in the trial Judge's additional charge to the jury. I likewise believe that only a Procrustean stretch can produce "coercion" of the jury.