## Commonwealth, Appellant, *v.* Jones.

Argued November 13, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Vram Nedurian, Jr.,* Assistant District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellant.

*G. Guy Smith,* with him *McCurdy and Smith,* for appellee.

OPINION BY MR. JUSTICE MANDERINO, March 25, 1974:

This is an appeal by the prosecution from an order granting the appellee, Otis Jones, a new trial following

his convictions involving murder in the first degree, robbery and conspiracy. A court en banc granted the new trial because the trial court failed to give points for charge requested by the appellee, Otis Jones. "The law is well settled that the grant or denial of a motion for a new trial will not be reversed by this Court, unless [the order of the court en banc] was a clear abuse of discretion or an error of law [citations omitted]." *Commonwealth v. English*, 446 Pa. 161, 163, 279 A. 2d 4, 5 (1971). *See also Commonwealth v. Hartman*, 383 Pa. 461, 119 A. 2d 211 (1956).

One of the reasons for the grant of a new trial was the refusal of the trial court to charge the jury that an adverse inference might be drawn against the prosecution because of its failure to call as a witness, Dr. Bernard Finneson. The charge requested by the defense was: "In producing evidence in support of its contentions, the Commonwealth did not call Doctor Bernard Finneson who allegedly is in possession of facts material to the Commonwealth's position. Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, an inference may be drawn that the evidence if produced would be unfavorable."

The court en banc held that the above charge should have been given because (1) Dr. Finneson was listed as a prosecution witness on the bill of indictment, (2) his testimony went to a crucial matter and (3) the prosecution did not give proper notice to defense counsel that Dr. Finneson would not be called as a witness by the prosecution.

In *Commonwealth v. Schmidt*, 437 Pa. 563, 567, 263 A. 2d 382, 384 (1970), we said the following concerning the prosecuting attorney's duty to call witnesses listed on the bill of indictment: "In Commonwealth v. Horn, 395 Pa. 585, 150 A. 2d 872, the Court pertinently said (page 589, 150 A. 2d page 874) : 'There is no duty

on the Commonwealth to call witnesses whose names appear on a bill of indictment or even eyewitnesses, if it believes after examination or investigation that their testimony is unreliable, or unworthy of belief, or surplusage or irrelevant. The law in such a case merely requires a District Attorney to notify the Court and defense counsel that he does not intend to call certain persons whose names appear on the bill of indictment as Commonwealth witnesses: Commonwealth v. Palermo, 368 Pa. 28, 81 A. 2d 540; Commonwealth v. Deitrick, 221 Pa. 7, 14, 15, 70 A. 275. See also Commonwealth v. Danz, 211 Pa. 507, 522, 60 A. 1070; Commonwealth v. Giacobbe, 341 Pa. 187, 195, 19 A. 2d 71. . . .' "

There is no dispute that Dr. Bernard Finneson was listed as a prosecution witness on the bill of indictment, and the prosecution does not contend that his testimony would have been unreliable, or noncredible, or irrelevant. Its only claim is that his testimony was cumulative. We disagree. Dr. Finneson's testimony would not have been cumulative to the testimony of any other prosecution witness, and the court en banc properly concluded that the refused charge "went to a crucial matter" and "was of particular significance since the issues . . . were extremely close."

The victim of the charged offenses was Jacob Auerbach. During the trial, although the appellee denied any participation in the robbery, one of the disputed issues concerned the cause of the victim's death. The prosecution contended that the victim's death in the hospital on December 12, 1969, was caused by head injuries received when he was hit or knocked down, two days earlier, outside his place of business when he was robbed by three men. The defense contended that the victim, who had a medical history of hemophilia, died of causes unrelated to the robbery.

The prosecution called Dr. Vincent P. DeAugustine, the coroner's physician, who performed an autopsy of

the victim's body after death, to prove the cause of death. Dr. DeAugustine testified that he found three sutured incisions on the victim's head, and two burr holes in the skull. He testified that the cause of death was "a cerebral contusion, cerebral hemorrhage, and an intracerebral hematoma" caused by "some external force or blow to the head." Dr. DeAugustine admitted during cross-examination that he did not perform any procedures with regard to any part of the body other than his limited examination of the skull. He said he did not check the body to see whether there could have been an intervening cause of death that may have taken effect prior to any effect from the injuries which he discovered in the skull area. Dr. DeAugustine also said that there was no evidence that any brain tissue had been removed prior to his autopsy. The court en banc, in reviewing Dr. DeAugustine's testimony, pointed out that the witness gave no explanation for the three large incisions found on the victim's head and did not consider the possibility of a cause of death outside the skull area. Dr. DeAugustine had no personal knowledge about the incisions or the burr holes which were made in the hospital.

During the two days that the victim was in the hospital between the robbery and his death, Dr. Bernard Finneson had performed surgery on the victim. Dr. Finneson, however, was not called as a witness by the prosecution. His testimony would not have been cumulative to that of any other witness presented by the prosecution. The prosecuting attorney admitted that fact when the unavailability of Dr. Finneson was being discussed with the trial court. The prosecuting attorney said that Dr. Finneson was the only witness competent to testify about certain disputed matters. The prosecuting attorney said to the court: "[The victim's personal doctor] can prove certain things that Dr. Finneson could also prove, but with regard to other areas

I believe those are solely within the realm of Dr. Finneson's proof, with regard to the evacuation of brain tissue from the skull, which is in direct opposition to what Dr. DeAugustine stated yesterday. That there was no evacuation of brain tissue."

We must reject the argument that Dr. Finneson's testimony would have been cumulative and agree with the court en banc that his testimony would have been significant.

The facts concerning the prosecution's failure to give proper notice to defense counsel that Dr. Finneson would not be called as a witness are as follows: Dr. Finneson was listed on the bill of indictment as a prosecution witness and a subpoena had been issued for his presence at trial. After the jury was selected on Tuesday, June 16, 1970, the trial court recessed until the next morning when the prosecution was scheduled to open its case. That same day, Tuesday, in a telephone call with Dr. Finneson's office, the prosecuting attorney granted a request that Dr. Finneson, who was under subpoena, be excused from appearing at the trial. The next day, Wednesday, June 17, 1970, after the prosecution indicated that it had completed the presentation of its case, except for one witness by the name of Cornell Anderson, defense counsel learned from the prosecuting attorney that Dr. Finneson had been excused, as of Tuesday, to be in New York City for the week. Defense counsel then called Dr. Finneson's office attempting to secure his attendance at the trial. He was told by Dr. Finneson's secretary that Dr. Finneson was in New York attending classes and would not be available for the trial. She also said that the district attorney's office had told her that Dr. Finneson was excused and need not appear.

During the presentation of the defense on Thursday, June 18, 1970, the trial court was informed of the above facts and admonished the prosecuting attorney for ex-

cusing Dr. Finneson and not making him available to the defense. The trial court, however, in charging the jury refused the defense's requested charge about Dr. Finneson.

The purpose of the requirement that the prosecution notify defense counsel of its intention not to call witnesses listed on the bill of indictment is to provide defense counsel the opportunity to call such witnesses, if it so desires. In this case, the prosecution gave notice to defense counsel at a time when the defense had no opportunity to call the witness who was outside the court's jurisdiction, and was prevented from doing so by the affirmative action of the prosecuting attorney in excusing the witness, who was under a court order, the subpoena, to appear for the trial. Thus, the witness was not available to the defense.

The prosecution has also argued that it did not excuse the witness. The argument is without merit. When Dr. Finneson's unavailability to the defense was being discussed at side bar, the prosecuting attorney said: "There was a call. I got the message. I called back [Dr. Finneson's] secretary and asked where is he going to be. New York, taking a course at the Einstein. I said, well, that is it." Moreover, during side bar, the prosecuting attorney did not dispute defense counsel's statement to the court that defense counsel was told by the prosecuting attorney that he had excused Dr. Finneson "as of Tuesday to be in New York City for the week."

The prosecution also contends that the defense waived its right to the requested charge because the defense did not ask for a continuance and cites only *Commonwealth v. Smith*, 442 Pa. 265, 275 A. 2d 98 (1971). *Smith*, however, does not support the prosecution's waiver theory. In *Smith*, a new trial was *granted* because defense counsel failed to request a continuance in order to obtain the presence of certain defense wit-

nesses. In addition, the witnesses were not prosecution witnesses. They were not listed on the bill of indictment, they were not under subpoena, and they were never excused by the prosecution from appearing at trial. The prosecution was not at fault in any way. *Smith* has no relevancy to the matter before us. Moreover, the prosecution cannot complain that the defense chose the wrong trial strategy by electing to proceed with the trial and request an adverse inference charge rather than seek a continuance. It was the fault of the prosecution—not the defense—that the witness was unavailable. The defense may have elected to proceed because it did not want a delay, which would have been at least four days, to intervene between the prosecution's evidence and the defense's evidence; or the defense may have elected to proceed because the trial court said "I don't want to wait until next week." Whatever the reason for the defense's strategic election, the prosecution is in no position to complain under the circumstances of this case.

The court en banc properly concluded that the trial court should have given the requested charge.

"[W]hen a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable. See McCormick, Law of Evidence, 534 (1954). See also Bentivoglio v. Ralston, 447 Pa. 24, 288 A. 2d 745 (1972), and Commonwealth v. Wright, 444 Pa. 536, 282 A. 2d 323 (1971)." *Commonwealth v. Moore*, 453 Pa. 302, 305, 309 A. 569, 570 (1973).

We have examined several other issues raised. They are without merit and do not require discussion. We conclude that the court en banc did not abuse its dis-

cretion or commit any error of law in granting a new trial.

Order affirmed.