Commonwealth *v.* Bird, Appellant.

588

Submitted December 16, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Charles J. Tague,* Assistant Public Defender, and *Peter T. Campana,* Public Defender, for appellant.

*Gregory V. Smith,* Assistant District Attorney, and *Allen E. Ertel,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., June 28, 1976:

Appellant was charged with simple assault. The incident out of which the charge arose was explicated in the opinion of the lower court: "On October 18, 1974, the defendant was operating a motor vehicle in which several of his young companions were passengers. The vehicle had been involved in an accident, and became inoperable as the defendant was proceeding in a westerly direction on East Third Street in Williamsport, at the point of a railroad overpass. The defendant and his companions were seen by Robert Stroup to run from the automobile, thereby abandoning it on East Third Street and allowing it to drift backwards and crash into the structure of the underpass. Assuming that something was amiss, Mr. Stroup left his business establishment and together with a Mr. Collins, undertook pursuit of the defendant and one of his companions in the hopes of persuading them to return to the scene until appropriate investigation could be conducted. Stroup and Collins eventually came upon the defendant and his companion, *Richard Ault*, in a lumber yard nearby. The defendant, without provocation, took a piece of wood and attempted to assault Collins with it. When he missed Collins, he turned upon Stroup and swung at his head. The blow was cushioned somewhat by Mr. Stroup's forearm, but Mr. Stroup did suffer minor injury to his forearm and forehead. The defendant and Ault attempted to escape the area, but the Williamsport Police Cruiser arrived at the scene and apprehended the defendant before he had left the general vicinity." (Emphasis added.)

On April 10, 1975, the appellant, after jury trial, was found guilty of simple assault. Post-trial motions were filed, argued and denied, and appellant was sentenced to confinement for a period of two months plus costs. The instant appeal followed.

The only issue on appeal involves the failure of the Commonwealth and the appellant to call Richard Ault as a witness. At the close of the testimony in this case, appellant's counsel requested a charge that the Com-

monwealth's failure to call Ault as a witness permitted an inference that Ault's testimony might have been unfavorable to the Commonwealth's case. This charge was refused but the court, over defense objection, charged as follows:

"Now, there is a question as to what weight if any, you should give to the fact that neither the Commonwealth nor the defendant called a potential witness, a Mr. Rich Ault. The law provides that the jury may infer that a potential witness would have given testimony unfavorable to a party who failed to call him, if it was natural and reasonable to expect the party to call him as a witness, and if there is no satisfactory explanation for why the party failed to do so. The defense contends that the Commonwealth should naturally and reasonably be expected to have called Rick Ault, and that the Commonwealth gave no satisfactory explanation for failing to do so. The Commonwealth contends that it would not be natural and reasonable to expect them, under the circumstances to call Rick Ault, and that, in any event, they did give a satisfactory explanation for why he was not here. These would be matters for you to consider. *If you find that it would be natural and reasonable for a party to have called a witness, and that party failed to give a satisfactory explanation for failing to do it, then you may infer that the witness would have given testimony unfavorable to that party.* The inference that a potential witness' testimony would have been unfavorable to a party who would have called him, is an inference that you may draw, and not that you are required to draw. It is just the inference that the testimony would be unfavorable, not that he would have given particular testimony. The inference is not a substitute for proof of specific facts." N.T. at 72-73 (emphasis added).

Appellant argues that the above charge permitted an unfavorable inference to be drawn against him for his failure to call Rich Ault. We agree and reverse.

The criteria required before an inference can be drawn from the failure of a party to produce a witness are well-established. " 'Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him.' Wills v. Hardcastle, 19 Pa. Superior Ct. 525, 529 (1902); Green v. Brooks, 215 Pa. 492, 496, 64 A. 672 (1906); Haas v. Kasnot, 371 Pa. 580, 584, 585, 92 A.2d 171 (1952). *The person not produced must be within the power of the party to produce.* II Wigmore on Evidence, §286." *Commonwealth v. Trignani,* 185 Pa. Superior Ct. 332, 340, 138 A.2d 215, 219, *aff'd,* 393 Pa. 140, 142 A.2d 160 (1958) (emphasis added). In *Commonwealth v. Jones,* 455 Pa. 488, 495, 317 A.2d 233, 237 (1974) our Supreme Court articulated the "missing witness" inference rule as follows: " *'[W]hen a potential witness is available to only one of the parties* to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable. See McCormick, Law of Evidence, 534 (1954). See also Bentivoglio v. Ralston, 447 Pa. 24, 288 A.2d 745 (1972), and Commonwealth v. Wright, 444 Pa. 536, 282 A.2d 323 (1971).' Commonwealth v. Moore, 453 Pa. 302, 305, 309 A.2d 569, 570 (1973)." (Emphasis added.)

The instruction in the instant case permitted the jury to draw an inference against the appellant for the failure to call Ault to the stand.[1] On the basis of the record before us to allow such an inference to be drawn was error. After a thorough review of the record, we are

---

1. As is pointed out in the text following this note, the fact that the charge also permitted such inference to be drawn against the Commonwealth did not cure the error.

unable to find any evidence which establishes that Ault was "peculiarly within the knowledge and reach" *Bentivoglio v. Ralston*, 477 Pa. 24, 29, 288 A.2d 745, 748 (1972) of the appellant such that the jury might be permitted to draw the inference that Ault's testimony would have been unfavorable to the appellant. Absent such evidence the criterion articulated in *Commonwealth v. Jones*, supra, that the potential witness must be "available to only one of the parties" has not been satisfied.

Moreover, the evidence that *was* adduced at the trial supports the conclusion that the instruction is at variance with the controlling tests for invoking the "missing witness" inference. The Commonwealth's response to appellant's counsel's request that the jury be permitted to draw an inference *against the Commonwealth, see* text supra, was framed in the alternative. The Commonwealth argued that (1) Ault was unavailable,[2] or (2) that Ault was *equally available* to the appellant, and, for either reason, no "missing witness" inference was permissible. On the former argument the Commonwealth offered no evidence that Ault was "peculiarly within the knowledge and reach" of the appellant. On the latter argument, to the extent Ault was "equally available" to both parties, the law is clear that no inference may be drawn against either party. *See Bentivoglio v. Ralston*, supra at 29, 288 A.2d at 748. The evidence produced at trial simply does not establish the requisite foundation for permitting the jury to draw an inference against the appellant for the failure to call Ault as a witness.

Judgment of sentence reversed, and a new trial granted.

---

2. One of the arresting officers testified as to unsuccessful attempts to locate Richard Ault. *See* N.T. at 55, 57.