409 A.2d 834

**COMMONWEALTH of Pennsylvania**

v.

**Philip NEWMILLER, Appellant.**

Supreme Court of Pennsylvania.

Argued April 20, 1979.

Decided Dec. 21, 1979.

Edward A. Stutman, Philadelphia, for appellant.

David W. Heckler, Deputy Dist. Atty., Stephen B. Harris, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, Philip Newmiller, was convicted by a jury of murder of the first degree. Post-verdict motions were denied and he was sentenced to life imprisonment. This direct appeal followed.

Appellant's conviction resulted from the homicide of Carl Ernst on October 10, 1972. At that time, appellant was the paramour of Donna Ernst, the victim's wife. Appellant usually visited the Ernst residence on nights when the victim was not at home. On the night of the slaying, the victim's usual bowling night, the victim arrived home earlier than expected. A fight broke out between the victim and appellant and appellant stabbed the victim. The victim died as a result of the stab wounds.

Appellant first argues that his conviction for murder of the first degree was violative of the double jeopardy clause of both the United States Constitution and the Pennsylvania Constitution.

On February 4, 1974, appellant entered a plea of guilty to murder of the second degree, pursuant to a negotiated plea bargain with a recommended sentence of four to fourteen years. Following a hearing, the trial court accepted the plea and sentenced appellant pursuant to the negotiated plea. On December 16, 1974, appellant filed a petition pursuant to the Post-Conviction Hearing Act,[1] alleging, *inter alia*, that the plea was not voluntary. On May 16, 1975, the post-conviction court entered an order allowing appellant to withdraw his plea of guilty and vacating the judgment of sentence.

On September 16, 1975, the first day of appellant's trial, he made an oral motion that murder of the first degree should not be submitted to the jury. He argued that the trial court's acceptance of the guilty plea to murder of the second degree acted as an implied acquittal to the charge of

1. Act of January 25, 1966, P.L. 1580, § 1, effective March 1, 1966, 19 P.S. § 1180–1, et seq.

murder of the first degree. The court denied appellant's motion and eventually submitted the charge of murder of the first degree to the jury. On September 23, 1975, appellant was convicted of murder of the first degree.

## I. DOUBLE JEOPARDY

■ Appellant argues that his conviction for murder of the first degree, following an overturned negotiated guilty plea to murder of the second degree, violates the provisions against double jeopardy contained in both the United States and Pennsylvania Constitutions. This court was presented with the same issue, on facts procedurally similar in *Commonwealth v. Klobuchir*, 486 Pa. 241, 405 A.2d 881 (1979). This court was equally divided in *Klobuchir*. We believe the opinion in support of affirmance (by Justice Nix, joined by Justice O'Brien and Justice Larsen) presents the proper analysis and result, and we, therefore, rely upon that opinion. The opinion in support of affirmance in *Klobuchir* found no violation of double jeopardy under either the United States or Pennsylvania Constitutions, reasoning that in a negotiated guilty plea to murder of the third degree, the defendant was never placed in jeopardy for murder of the first degree. While the trial court could find that the offense in question rose to murder of the first degree, the court could not impose sentence on such a finding because the defendant would then be allowed to withdraw his plea of guilty. Pa.R.Crim.P. 319(b)(3). In such circumstances, the court has the power only to reject the proposed plea agreement. Believing the opinion in support of affirmance in *Klobuchir* to be persuasive, we find no violation of the double jeopardy clause of either the United States or Pennsylvania Constitutions.[2]

2. Appellant does not raise the issue of possible prosecutorial vindictiveness in trying him for murder of the first degree as a denial of due process. See *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); Comment, The Constitutionality of Reindicting Successful Plea Bargain Appellants on the Original Higher Charges, 62 Calif.L.Rev. 258 (1974).

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Appellant next argues that he was denied effective assistance of counsel when his trial counsel failed to object to a portion of the court's charge to the jury. The court charged the jury as follows:

"There has been some argument made to you, I think it is fair to say by both sides, as to the absence of certain witnesses or the failure to call available witnesses possessing some peculiar knowledge concerning facts essential to a given party's case. *The failure to call such a witness gives rise to an inference that the testimony of such uninterrogated witness would not sustain the contention of that party but this test or rule is not operative unless it appears to you that the absent witness had peculiar knowledge or means of knowledge rendering his testimony of importance to the party in the position to call him.* Before invoking that rule, you must understand that which is, I assume, obvious, that being if a witness is equally accessible to both sides and there is no reason why one rather than the other should offer him, the rule, of course, does not apply." (Emphasis added.)

Trial counsel failed to object to this portion of the charge and appellant now argues that this failure amounts to ineffective assistance of counsel. The facts are as follows.

On the night of the killing, Donna Ernst, the victim's wife, was present in the house when the homicide occurred. When the police arrived at the Ernst home, Mrs. Ernst told police that her husband must have found an intruder in the house and that he must have been stabbed in the ensuing struggle. During their investigation, however, the police were informed that appellant was usually at the Ernst home on the victim's bowling night. Mrs. Ernst originally denied that appellant was present. A search of the Ernst residence convinced police that Mrs. Ernst was lying, and she finally told police that appellant had stabbed the victim. As Mrs. Ernst had lied to police, who then knew (or at least strongly suspected) that she and the victim were having an affair, the police secured a material witness warrant for Mrs. Ernst.

Following the withdrawal of appellant's guilty plea, trial was scheduled for September 16, 1975. Although Mrs. Ernst's name appeared on the murder indictment as a possible witness, the Commonwealth made clear during the early stages of the trial that it did not intend to call her as a Commonwealth witness. The following exchange occurred between the court and defense counsel:

"MR. SEROTA: Preliminarily, first, yesterday, Mr. Heckler made a representation to the Court that it was not his intention to call Donna Ernst. Your Honor indicated at that time that all that was necessary was Mr. Heckler make this information known to me and that she be made equally accessible to me.

"THE COURT: No, I did not say that. I said she may now be considered equally accessible to you. If that is so, the jury is entitled to know if that witness is equally accessible to both parties, they do not have the right to draw any inference of the party that does not call her, if the testimony would be adverse to that party.

"MR. SEROTA: May I briefly point out to the Court, sir, that I have spoken to Mr. Heckler, I have spoken to Mr. Alfred Shea who represents Mrs. Ernst, and they indicated to me, sir, that if she testified in a certain manner that, in fact, she might well be liable for prosecution, sir.

"THE COURT: This may be, but I am not going to allow a statement like that to appear on the record. If you wish to call her outside the presence of the jury and she invokes the Fifth Amendment, that is something else.

"MR. SEROTA: Most respectfully, what I am saying is, the Commonwealth has the right and capability to seek immunity for that witness, sir. The defense does not have that equal right. She is, therefore, not equally accessible to the defense, sir, on that basis. I ask that Your Honor reverse that previous ruling.

"THE COURT: I am not going to rule on anything in a vacuum. I do not know what you are saying is true. I know what you are saying to me you believe to be correct. I do not know she is going to invoke the Fifth Amendment.

"MR. SEROTA: What I am asking is that the Court direct the District Attorney to direct her—

"THE COURT: No, I will not so direct."

During its case in chief, the Commonwealth, recognizing that Mrs. Ernst's availability would be at issue, called a Mr. Vincent DePinzo, who would have testified that appellant and Mrs. Ernst were living together in the house next door to his. The court, however, disallowed the testimony as being prejudicial. The following exchange then occurred:

"THE COURT: . . . I am not going to admit the testimony but I will make this statement on the record. It does show that Donna Ernst is available as a witness on behalf of the defendant and that she is more accessible or as much accessible to them as to the Commonwealth.

"THE COURT: If you are objecting to the offer of proof, we will sustain the objection.

"MR. SEROTA: I am, sir, absolutely.

"THE COURT: Therefore, if you would argue that to the jury, I will advise them to the contrary.

"MR. SEROTA: I can't argue what?

"THE COURT: The absence of Donna Ernst in the Commonwealth's case.

"MR. SEROTA: Sir, let me say this to you. I'm not sure I understand this. Can we go off the record?

"THE COURT: No. I think we had better stay on the record.

"MR. SEROTA: I do intend to argue to the jury, at least, that the Commonwealth, whose burden it was, has not produced Donna Ernst.

"THE COURT: I will then tell the jury that the Commonwealth has no burden to produce her and tell them why.

"MR. SEROTA: Well, the law is that the Commonwealth does not have the duty to produce all eyewitnesses.

"THE COURT: Correct.

MR. SEROTA: But I do expect to say, 'Look, now, if there is one word Phil Newmiller has said that isn't true, why don't they call Donna Ernst?' I'm going to argue something to that effect.

"THE COURT: I am warning you that I am going to tell the jury, if you wish to do it.

"MR. SEROTA: Would you make it clear exactly what that is?

"THE COURT: I am going to tell them that Donna Ernst is equally accessible and available to the defense and that the Commonwealth has no duty to call any eyewitness that they do not believe to be credible, and that the record will reveal in this case that the Commonwealth stated that they did not intend to call her.

\* \* \* \* \* \*

"THE COURT: I would say—to go back to this thing about Donna Ernst—I am not certain what I would say to the jury. I do not want what I have said in connection with this on this record at this point to bind me as to what I would tell the jury, because I do not know what, if anything, defense counsel may argue to them, but I would certainly say to them that the Commonwealth has no duty to call a witness that is equally accessible to both sides.

"MR. SEROTA: Well, I already made my views earlier in the case on that, sir, and I would say *I am going to take exception to the charge on that basis, of course.*

"THE COURT: I would further make one more statement. I do not see how there is any basis in law for the Commonwealth to grant immunity to Donna Ernst.

"MR. SEROTA: Well, that may or may not be but I don't think that is before the Court.

"THE COURT: Well, that is the argument that you made, so it is before the Court." (Emphasis added.)

Appellant took the stand in his own behalf. He testified that he killed the victim, but did so in self-defense. During closing arguments, both the attorney for the Commonwealth and defense counsel argued that opposing counsel should have called Mrs. Ernst as a witness. Because of closing arguments, the trial court gave the previously quoted charge. Defense counsel failed to object and appellant now argues that this failure amounted to ineffective assistance of counsel.

In *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599 (1967), we stated:

". . . [O]ur inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis. . . ." (Emphasis in original.)

In order to find ineffectiveness on the part of trial counsel, we must find that no reasonable basis exists for counsel's failure to object to the questioned portion of the charge.

In *Commonwealth v. Bird*, 240 Pa.Super. 587, 361 A.2d 737 (1976), the Superior Court was presented with an issue concerning the propriety of the following charge:

"Now, there is a question as to what weight if any, you should give to the fact that neither the Commonwealth nor the defendant called a potential witness, a Mr. Rich Ault. The law provides that the jury may infer that a potential witness would have given testimony unfavorable to a party who failed to call him, if it was natural and reasonable to expect the party to call him as a witness, and if there is no satisfactory explanation for why the party failed to do so. The defense contends that the Commonwealth should naturally and reasonably be expected to have called Rick Ault, and that the Commonwealth gave no satisfactory explanation for failing to do so. The Commonwealth contends that it would not be natural and reasonable to expect them, under the circumstances to call Rick Ault, and that, in any event, they did give a satisfactory explanation for why he was not here. These would be matters for you to consider. *If you find that it would be natural and reasonable for a party to have called a witness, and that party failed to give a satisfactory explanation for failing to do it, then you may*

*infer that the witness would have given testimony unfavorable to that party.* The inference that a potential witness' testimony would have been unfavorable to a party who would have called him, is an inference that you may draw, and not that you are required to draw. It is just the inference that the testimony would be unfavorable, not that he would have given particular testimony. The inference is not a substitute for proof of specific facts." Id., 240 Pa.Super. at 590, 361 A.2d at 738–739. (Emphasis in original.)

As the Superior Court stated:

"The criteria required before an inference can be drawn from the failure of a party to produce a witness are well-established. ' "Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him." *Wills v. Hardcastle*, 19 Pa.Super. 525, 529 (1902); *Green v. Brooks*, 215 Pa. 492, 496, 64 A. 672 (1906); *Hass v. Kasnot*, 371 Pa. 580, 584, 585, 92 A.2d 171 (1952). *The person not produced must be within the power of the party to produce.* II Wigmore on Evidence, § 286.' *Commonwealth v. Trignani*, 185 Pa.Super. 332, 340, 138 A.2d 215, 219, aff'd, 393 Pa. 140, 142 A.2d 160 (1958) (emphasis added). In *Commonwealth v. Jones*, 455 Pa. 488, 495, 317 A.2d 233, 237 (1974) our Supreme Court articulated the 'missing witness' inference rule as follows: ' *"[W]hen a potential witness is available to only one of the parties* to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, *the jury may draw an inference it would have been unfavorable.* (Emphasis added.) See McCormick, Law of Evidence, 534 (1954). See also *Bentivoglio v. Ralston*, 447 Pa. 24, 288 A.2d 745 (1972), and *Commonwealth v. Wright*, 444 Pa. 536, 282 A.2d 323 (1971)." *Commonwealth v. Moore*, 453 Pa. 302,

305, 309 A.2d 569, 570 (1973).' (*Emphasis in Commonwealth v. Bird.*)

"The instruction in the instant case permitted the jury to draw an inference against the appellant for the failure to call Ault to the stand. On the basis of the record before us to allow such an inference to be drawn was error. After a thorough review of the record, we are unable to find any evidence which establishes that Ault was 'peculiarly within the knowledge and reach' *Bentivoglio v. Ralston*, 447 Pa. 24, 29, 288 A.2d 745, 748 (1972) of the appellant such that the jury might be permitted to draw the inference that Ault's testimony would have been unfavorable to the appellant. Absent such evidence the criterion articulated in *Commonwealth v. Jones*, supra, that the potential witness must be 'available to only one of the parties' has not been satisfied." *Commonwealth v. Bird, supra*, 240 Pa.Super. at 591, 592, 361 A.2d at 739. (Footnote omitted.)

Further, in *Bird*, the Commonwealth argued that no error was committed in giving the charge because the witness was equally available to both parties. As the Superior Court stated:

". . . to the extent Ault was 'equally available' to both parties, the law is clear that no inference may be drawn against either party. See *Bentivoglio v. Ralston*, supra, 447 Pa. at 29, 288 A.2d at 748. The evidence produced at trial simply does not establish the requisite foundation for permitting the jury to draw an inference against the appellant for the failure to call Ault as a witness." *Commonwealth v. Bird, supra*, 240 Pa.Super. at 592, 361 A.2d at 740.

 In the instant case, as in *Bird*, there was simply no evidence in this record that Mrs. Ernst was "peculiarly within the knowledge and reach" of either party. As counsel for both parties, in their summation, argued the issue of a missing witness to the jury, the trial court obviously felt compelled to explain the missing witness rule to the jury. As no evidence was presented to the jury that Mrs. Ernst was within either parties' reach, the court should, as a

matter of law, have instructed the jury to disregard counsels' arguments and not apply the missing witness rule. Thus, by charging as it did, the court permitted the jury to speculate on whether or not to draw the adverse inference. As such that portion of the charge was erroneously given. We further can find no reasonable basis for trial counsel's failure to object to the charge. As we believe appellant was denied effective assistance of trial counsel, he is entitled to a new trial.[3]

Judgment of sentence reversed and new trial ordered.

MANDERINO, J., did not participate in the decision of this case.

EAGEN, C. J., files a concurring opinion.

ROBERTS, J., files a concurring and dissenting opinion.

NIX, J., files a concurring and dissenting opinion in which LARSEN, J., joins.

LARSEN, J., files a separate concurring and dissenting opinion.

3. Because of our disposition of this case, we need not reach the following issues raised by appellant:

"A. Appellant was denied effective assistance of counsel where trial counsel repeatedly brought to the attention of the jury by his leading questions the fact that appellant had stated a wish to remain silent and have counsel present while in the custody of the police, and prior to making the statement subsequently obtained.

"B. In its instructions to the jury regarding the elements of murder, it was error for the Court to repeatedly state that murder in the first degree was a 'wilful, deliberate and premeditated killing', 'accompanied by specific intent to kill'; the Court further erred in instructing that murder in the second degree was a 'wilful, deliberate and premeditated killing without specific intent', and the failure of trial counsel to object to such errors in the instructions constituted denial of the right to effective assistance of counsel to defendant.

"D. It was error for the Court to deny appellant's motions to suppress certain physical evidence and oral statements, allowing their introduction at trial, where the physical evidence was acquired, and appellant's arrest the result of authority granted upon insufficient probable cause, and where appellant's later oral statement was tainted by that prior illegality."

EAGEN, Chief Justice, concurring.

I agree a new trial is necessary in this case for the same reason advanced in my dissenting opinion in *Commonwealth v. Klobuchir*, 486 Pa. 241, 405 A.2d 881 (1979).

LARSEN, Justice, concurring and dissenting.

I join Mr. Justice Nix's concurring and dissenting opinion and thus, would affirm the judgment of sentence.

The Majority's position on ineffective assistance of counsel allows the defense to make a mockery out of justice. Defense counsel can remain silent as to a correct, but non-relevant, portion of a judge's charge and can then argue to the jury using said charge as basis for support for acquittal. Upon being found guilty, the defendant will now be guaranteed a new trial because of defense counsel's ineffectiveness in failing to object to the charge. Justice is not done by allowing this type of strategy to exist.

NIX, Justice, concurring and dissenting.

I am fully in accord with the majority's conclusion as to the double jeopardy question. I do not, however, accept its view that trial counsel was ineffective for not objecting to that portion of the charge relating to an adverse inference.

There is no question that the statement of the law with reference to the failure of a party to produce a witness was properly stated by the court. The majority concedes this but concludes that, under the circumstances, the court should have not given the charge, or in the alternative, should have advised the jury that the witness was equally accessible to either party. Since, however, the defense, as an important part of its case, had argued that an adverse inference should have been drawn against the Commonwealth for the failure to produce the wife of the decedent, it would have been totally inconsistent for trial counsel either to have objected to the giving of the adverse inference charge or to have suggested that the court instruct the jury to disregard his own argument. I, therefore, can find no

basis to hold counsel derelict for a failure to object to this portion of the charge.

I would affirm the judgment of sentence.

LARSEN, J., joins in this opinion.

ROBERTS, Justice, concurring and dissenting.

I.

Part I of the opinion of Mr. Justice O'Brien relies upon the opinion in support of affirmance in *Commonwealth v. Klobuchir,* 486 Pa. 241, 405 A.2d 881 (1979), an opinion that represents the views of three members of this Court, to reject appellant's contention that his conviction of murder of the first degree violates the double jeopardy clauses of the United States and Pennsylvania Constitutions. The result is that once again the Commonwealth's inexcusable, improper and vindictive attempt to punish appellant for successfully exercising his constitutional right to obtain relief from an involuntary and unlawfully entered guilty plea is condoned. For the reasons stated in my opinion in support of reversal in *Klobuchir,* and for the additional reasons stated here, I must dissent from Part I.

The opinion of Mr. Justice O'Brien states that the facts of this case are "procedurally similar" to those in *Klobuchir.* There is, however, a significant distinction between the cases. Both appellants were charged with homicide and pursuant to negotiated plea bargain agreements were sentenced on convictions of lesser crimes than murder of the first degree. Neither appellant took a direct appeal from his conviction but, later, on collateral attack, both were permitted by the post-conviction hearing court to withdraw their pleas after successfully establishing that the pleas did not represent voluntary waivers of their constitutional rights. The Commonwealth did not appeal from the orders of either PCHA court. Finally, each appellant was threatened by the Commonwealth with being put to trial on charges of murder of the first degree and sought dismissal of the higher charges in pre-trial motions.

Here, however, the similarities end. Klobuchir appealed to this Court from denial of his motion to dismiss. See *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977). Newmiller, on the other hand, chose to proceed to trial, was convicted by a jury of murder of the first degree, and was sentenced to life imprisonment. Newmiller then renewed his pre-trial motion to dismiss in post-trial motions and on direct appeal to this Court.

Thus, this appeal presents a consideration that according to the opinion in support of affirmance in *Klobuchir* was not present there. At 486 Pa. 248 n.5, 405 A.2d 881 n.5. Appellant has not only been placed at risk of being convicted of first degree murder on retrial, he has in fact been so convicted and has received an enhanced sentence. As Chief Justice Eagen so aptly noted in his opinion in support of reversal in *Klobuchir,* absent post-sentence conduct evincing changed circumstances, *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969), precludes the present imposition of a greater sentence than that imposed following appellant's earlier conviction of murder of the second degree. Principles of fairness and justice certainly preclude acceptance of any suggestion that appellant's successful collateral attack on his guilty plea provides the requisite change of circumstances.

One of the central policies embodied in the constitutional guarantee against double jeopardy is the principle that a defendant may not be faced with a choice of either permitting an illegal conviction to stand or gambling that he will not be convicted of greater charges on retrial:

"When a man has been convicted of second degree murder and given a long term of imprisonment it is wholly fictional to say that he 'chooses' to forego his constitutional defense of former jeopardy on a charge of murder in the first degree in order to secure a reversal of an erroneous conviction of the lesser offense. In short, he has no meaningful choice. And as Justice Holmes observed, with regard to this same matter in *Kepner v. United States,* 195 U.S. 100, at page 135, 24 S.Ct. 797, at page 897, 49

L.Ed. 114: 'Usually no such waiver is expressed or thought of. Moreover, it cannot be imagined that the law would deny to a prisoner the correction of a fatal error unless he should waive other rights so important as to be saved by an express clause in the Constitution of the United States.' "

*Green v. United States,* 355 U.S. 184, 191–92, 78 S.Ct. 221, 226, 2 L.Ed.2d 199 (1957).

Indeed, our system of criminal justice is based on the concept of fair play and is designed to ensure fairness and accuracy at all stages of all criminal proceedings. That system does not permit a defendant to be penalized for exercising one right by having another taken away. E. g., *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (government may not use fear of death penalty to dissuade defendant from asserting right to jury trial); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (prosecution cannot use statements obtained from policemen threatened with discharge if they refuse to testify); *North Carolina v. Pearce,* supra (accused may not be penalized for successfully exercising right of appeal by receiving enhanced sentence on retrial).

Article V, section 9 of the Constitution of Pennsylvania guarantees a right of appeal to all litigants in the courts of this Commonwealth. Although a guilty plea incorporates waivers of many important constitutional rights, an accused by pleading guilty does not waive the right to appeal and obtain relief from a jurisdictionally defective or involuntary guilty plea. See *Commonwealth v. Maddox,* 450 Pa. 406, 300 A.2d 503 (1973); *Commonwealth v. Zanine,* 444 Pa. 361, 282 A.2d 367 (1971); *Commonwealth v. Stokes,* 426 Pa. 265, 232 A.2d 193 (1967). Moreover, when the right of an accused to a direct appeal from a guilty plea is denied, relief from the invalid conviction is available on collateral attack. See *Commonwealth v. Ray,* 483 Pa. 377, 396 A.2d 1218 (1979). Indeed, fair and evenhanded administration of justice demands that the prospect of a more severe sentence or of conviction of an offense of higher degree upon reprosecution

is an unacceptable deterrent to exercise of this right to appeal or collaterally attack an invalid plea. ABA Project on Standards for Criminal Justice, Standards Relating to Post-Conviction Procedures § 2.3(c)(iii).

The most basic principles of American jurisprudence forbid this Court to permit the Commonwealth to coerce those who may be serving sentences based on invalid pleas into giving up their appellate rights because they fear prosecutorial retaliation. See *Commonwealth v. Klobuchir,* supra (Opinion in Support of Reversal of Manderino, J.). The Commonwealth may not act as "a vindictive seeker of vengeance." *Commonwealth v. Karamarkovic,* 218 Pa. 405, 408, 67 A. 650, 651 (1907). The prosecution must bargain in good faith, strictly and faithfully uphold its end of a plea bargain agreement, and treat the accused with fairness throughout the plea bargaining process. See *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *Commonwealth v. Alvarado,* 442 Pa. 516, 276 A.2d 526 (1971); ABA Standards, The Prosecution Function § 4.3; Pleas of Guilty § 2.1(a)(ii)(4), (5). The prosecutorial duty to treat the accused with the utmost good faith does not end when an invalid plea is successfully attacked. Indeed, the Commonwealth's duty, if anything, is increased to ensure that none of the accused's constitutional rights are once again violated during the renewed proceedings.

The plea bargaining process serves many valuable and important interests of both the accused and the Commonwealth. See *Commonwealth v. Alvarado,* supra. For the accused, the ability to plead guilty to lesser charges reduces the very psychological, physical, and financial pressures inherent in facing the risk of trial against which the double jeopardy clause seeks to protect. *Breed v. Jones,* 421 U.S. 519, 529–30, 95 S.Ct. 1779, 1786, 44 L.Ed.2d 346 (1975). The Commonwealth, while also saved the expense and uncertainty of a trial is also provided with an effective tool to ease the administration of justice by reducing the time and burden on professional resources consumed in processing criminal cases and reducing the potential for serious back-

logs in the Commonwealth's courts. Yet, the Commonwealth cannot overlook its primary interest in doing justice and effectively enforcing the law when entering into plea bargain agreements. See *Commonwealth ex rel. Kerekes v. Maroney,* 423 Pa. 337, 223 A.2d 699 (1966). But is justice rendered, or effective law enforcement furthered, when an accused is forced to serve an invalid sentence imposed on an unlawful conviction? Fair play demands that unlawful convictions, obtained in violation of the constitutional rights of an accused, be remedied as quickly and effectively as possible. Certainly, the opinion of Mr. Justice O'Brien hinders correction of unlawful convictions and compels still another Pennsylvania litigant to resort to the federal courts for relief. See *Ferri v. Ackerman,* —— U.S. ——, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979), reversing 483 Pa. 90, 394 A.2d 553 (1978); *United States ex rel. Sullivan v. Cuyler,* 593 F.2d 512 (3d Cir. 1979), *cert. granted* —— U.S. ——, 100 S.Ct. 44, 62 L.Ed.2d 30 (1979).*

Permitting the Commonwealth to penalize successful appellants can only serve to chill appellate rights and hinder achievement of the vital and important goals of orderly and proper administration of justice. The constitutional guarantee against double jeopardy requires that on re-trial appellant be tried on charges no greater than murder of the second degree.

## II.

Part II of the majority opinion holds that appellant's counsel was ineffective in failing to object to the trial court's "missing witness" charge. I agree with the majority's conclusion on this issue.

---

* It must be noted that there is, of course, nothing to preclude appellant, before retrial, see *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977) (plurality opinion); *Commonwealth v. Haefner,* 473 Pa. 154, 373 A.2d 1094 (1977), from seeking to dismiss charges of murder on grounds including that of due process. See *Commonwealth v. Klobichur,* 486 Pa. 241, 405 A.2d 881 (1979) (Opinion of Roberts, J., in Support of Reversal); Id. (Opinion of Eagen, C. J., in Support of Reversal); see generally, *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969).