J. S22023/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT HARES, | : | |
| | : | |
| Appellant | : | No. 1040 MDA 2015 |

Appeal from the Judgment of Sentence May 28, 2015
In the Court of Common Pleas of Lackawanna County
Criminal Division No(s): CP-35-CR-0002460-2014

BEFORE: MUNDY, J., DUBOW, J., and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.: **FILED MAY 26, 2016**

Appellant, Robert Hares, appeals from the judgment of sentence entered in the Court of Common Pleas of Lackawanna County, following his jury convictions for Aggravated Assault, Simple Assault, and Recklessly Endangering Another Person (REAP).[1]  After careful review, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

The trial court set forth the factual history of this case as follows:

On November 3, 2014, an argument broke out at the home of Bessie Hares, [Appellant]'s former wife.  Around 5:00 p.m. on that date, Bessie Hares and her paramour, James Clark, the victim in this case, had a discussion regarding [Appellant] still residing in Bessie Hares' home and how Ms. Hares lacked the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2702(a)(1), 18 Pa.C.S. § 2701(a)(1), and 18 Pa.C.S. § 2705, respectively.

funds to evict [Appellant]. During the course of this conversation, according to the testimony of Ms. Hares, she became upset, and asked Mr. Clark to leave the home. According to the testimony of Ms. Hares, while Mr. Clark was packing his belongings to leave, [Appellant] returned home around 9:30 or 10:00 p.m. with two other individuals, Crystal Macomber and Dallas Zipatelli. Ms. Hares testified that while Mr. Clark was gathering his belongings, [Appellant] approached Mr. Clark and asked him to leave the home. Mr. Clark "mumbled" something to [Appellant] in response. Mr. Clark testified that no one had asked him to leave, but when [Appellant] arrived home [Appellant] approached him, grabbed him, lifted his chin, stated "you deserve this" and began to strike him from the right hand side. At that point, Mr. Zipatelli struck Mr. Clark from the other side. [Appellant], along with Mr. Zipatelli, punched Mr. Clark about "five (5) times." Mr. Clark did not attempt to fight back. At the end of the fight, Defendant informed Mr. Clark that he had "two minutes to get the rest of [his] stuff and leave." Mr. Clark stated he was surprised by the attack from the [Appellant].

As a result of the attack, Mr. Clark suffered a fractured jaw, one of his teeth was knocked out, and he had severe bruising to his face. As a result of the fractured jaw, Mr. Clark had surgery, and his jaw was wired shut for about six (6) weeks. This led to Mr. Clark losing about twenty five (25) to thirty (30) pounds, bringing his weight down to about one hundred thirty five (135) pounds. During this period of time, Mr. Clark could not speak. He also had to carry a pair of pliers with him at all times in case he had to snip the wires himself if he became nauseous and had to vomit.

Trial Ct. Op., filed 8/27/15, at 2-3 (internal citations omitted).

At a pre-trial conference on February 6, 2015, the Commonwealth made an oral motion to exclude reference to a prior allegation of Rape against Mr. Clark. In response, Appellant argued that in July of 2014, Ms. Hares accused Mr. Clark of rape and that this accusation should be admissible during cross-examination of Ms. Hares as well as to prove Appellant's state of mind at the time that Appellant attacked Mr. Clark. N.T.,

Pre-Trial, 2/6/15, at 18-20. The trial court ruled "there shall be no mention of this rape allegation at any point unless and until [Appellant] takes the stand . . . We will have a hearing on the merits at that time." ***Id.*** at 22.

On February 11, 2015, the jury convicted Appellant of Aggravated Assault, Simple Assault, and REAP. On May 8, 2015, the trial court sentenced Appellant to an aggregate term of four to eight years' incarceration for the Aggravated Assault conviction, and a term of one year of special probation for the REAP conviction. The court merged the Simple Aassault conviction for sentencing.

Appellant filed timely Post-Trial Motions, which the trial court denied on May 28, 2015. On June 12, 2015, Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

## ISSUES ON APPEAL

Appellant raises the following eight issues on appeal:

(1) Whether the evidence was insufficient to support the verdicts?

(2) Whether the verdicts were against the weight of the evidence since the Commonwealth failed to rebut the Appellant's defense of property?

(3) Whether the trial court erred when it barred the Appellant from introducing evidence that he was aware of the fact that Bessie, his wife, had accused the victim of raping her earlier that year, thus precluding evidence relevant to his state of mind when striking the victim?

(4) Whether the trial court committed prejudicial error when, over Appellant's objection, it permitted the victim's sister

- 3 -

to testify as her testimony was cumulative, irrelevant, and inflammatory?

(5) Whether the jury instructions regarding the Appellant's decision not to call eye-witnesses was prejudicial, unconstitutional, and contrary to the law, since the Appellant bears no burden in a criminal trial?

(6) Whether the trial court acted outside of the scope of its authority when it, *sua sponte*, objected to defense counsel's closing argument and instructed the jury on the Appellant's failure to call eye-witnesses as the Commonwealth made no such objection?

(7) Whether the trial court committed reversible error by refusing to give the Appellant's requested jury instruction pertaining to the defense of self-defense?

(8) Whether the trial court erred by failing to merge the sentences for aggravated assault, and for recklessly endangering another person?

*See* Appellant's Brief at 4-5.

## LEGAL ANALYSIS

### Issues 1 and 2

Appellant's arguments presented in his first two issues pertaining to the sufficiency and weight of the evidence essentially challenge the jury's decision not to believe his defense that the use of force was justified to defend his property, *i.e.*, to prevent an unlawful trespass. He avers that the Commonwealth failed to present sufficient evidence to rebut his claims. Appellant's Brief at 20. We address these issues together, as did the trial court.

Our Pennsylvania Supreme Court has set forth the appropriate standards of review: "[w]hen reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt." *Commonwealth v. Weiss*, 776 A.2d 958, 963 (Pa. 2001) (citation omitted).

The standard of review applied to a challenge to the weight of the evidence is as follows:

> A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Cousar*, 928 A.2d 1025, 1035-36 (Pa. 2007).

"[C]onduct which would otherwise constitute a crime can be excused when necessary to prevent a greater harm or crime." *Commonwealth v. Berrigan*, 501 A.2d 226, 229 (Pa. 1985). The use of force to protect property is allowed "when the actor believes that such force is immediately necessary [] to prevent or terminate an unlawful entry or other trespass

upon land." 18 Pa.C.S. § 507(a). However, before resorting to force a property owner must first request that the trespasser leave, **unless**:

(i)     such request would be useless;

(ii)    it would be dangerous to himself of another person to make the request; or

(iii)   substantial harm will be done to the physical condition of the property which is sought to be protected before the request can effectively be made.

18 Pa.C.S. § 507(c)(1)(i-iii).

In its Pa.R.A.P. 1925(a) Opinion, the trial court thoroughly reviewed the facts and applicable law before concluding that Appellant's first and second issues are without merit. The trial court stated that there was sufficient evidence to rebut Appellant's defense of property defense, that the trial testimony presented two factual scenarios, that the jury was free to believe and weight either scenario, that neither scenario demonstrated a need to use force, and that the verdicts were not contrary to the weight of the evidence. **See** Trial Ct. Op., filed 8/27/15, at 4-8. Our review of the certified record, the briefs of the parties, and the applicable law, supports the well-reasoned Trial Court Opinion. Accordingly, we adopt that portion of the Opinion pertaining to Appellant's first two issues as our own.

### **Issues 3 and 4**

Appellant's third and fourth issues challenge the trial court's evidentiary rulings. Appellant argues in his third issue that the trial court erred when it granted the Commonwealth's motion to exclude evidence that Ms. Hares had accused Mr. Clark of raping her many months prior to the

incident. Appellant avers that "his knowledge of the allegation would be admissible as to his state of mind" and "was essential in order to establish his defense of property" defense. Appellant's Brief at 27. Appellant also argues that he should have been able to impeach Ms. Hares on cross-examination regarding the allegation. Appellant's Brief at 28.

In his fourth issue, Appellant argues that the trial court erred when it permitted Mr. Clark's sister, Ms. Jenkins, to testify because her testimony regarding her brother's injuries, his going to the hospital, and his filing a report at the police station was "cumulative, irrelevant, and inflammatory" in light of photographs of and Clark's testimony about his injuries. Appellant's Brief at 4, 29.

The admission or exclusion of evidence "is vested in the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Commonwealth v. Brown*, 839 A.2d 433, 435 (Pa. Super. 2003) (citation omitted). A trial court abuses its discretion when it "overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." *Id.* (citation omitted).

We have thoroughly reviewed the certified record, the briefs of the parties, the applicable law, and the well-reasoned Trial Court Opinion. We conclude that Appellant's third issue and fourth issues merit no relief. The trial court properly found that Appellant's attorney could not cross-examine

Ms. Hares regarding the allegation pursuant to Pa.R.E. 608(b)(1), that the issue of whether the allegation was relevant to Appellant's state of mind was moot as Appellant never testified, and that Ms. Jenkins' testimony was relevant to demonstrate the serious injuries suffered by Mr. Clark and was not prejudicial, cumulative, or inflammatory. *See* Trial Ct. Op., filed 8/27/15, at 8-9, 16-18. The comprehensive Trial Court Opinion properly disposes of the issues and we adopt that portion of the Trial Court's Opinion as our own. *See id.*

**Issue 5**

In his fifth issue, Appellant avers that the trial court's instruction to the jury regarding Appellant's decision not to call eyewitnesses was prejudicial, unconstitutional, and contrary to the law since Appellant bears no such burden in a criminal trial. Appellant's Brief at 4. Our review indicates that Appellant did not properly preserve this issue and, therefore, it is waived.

The Pennsylvania Rules of Criminal Procedure provide that "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(C). Further, "the mere submission and subsequent denial of proposed points for charge…will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." *Commonwealth v. Sanchez*, 82 A.3d 943, 978 (Pa. 2013) (citation omitted); *see also* Pa.R.A.P. 302(b).

In the instant case, at no point did Appellant object to the jury instructions. *See* N.T. Trial, 2/11/15, at 26-36. At the conclusion of the trial, the trial court asked, "any additions or corrections to the charge?" to which Appellant's attorney answered, "[n]o." *Id.* at 82. Because Appellant's attorney failed to object, Appellant waived this issue for appellate review. *See* Pa.R.A.P. 302(b); *Sanchez*, *supra*.

### Issue 6

Appellant's sixth issue is that the trial court acted outside of the scope of its authority when it, *sua sponte*, gave a cautionary instruction during closing arguments after Appellant's attorney alluded to a witness who did not testify and made inflammatory comments. Appellant's Brief at 5. This argument is without merit.

The Pennsylvania Rules of Criminal Procedure provide the trial court with the authority to give instructions to the jury "before taking of evidence or at **anytime** during the trial as the judge deems necessary and appropriate for the jury's guidance in hearing the case." Pa.R.Crim.P. 647(E) (emphasis added). Further, a trial court may *sua sponte* give a cautionary instruction to the jury to disregard remarks by a prosecutor or defense attorney in order to cure potential prejudice. ***See, e.g., Commonwealth v. Chimenti***, 524 A.2d 913, 924 (Pa. Super. 1987).

We have thoroughly reviewed the certified record, the briefs of the parties, the applicable law, and the well-reasoned Trial Court Opinion. The

trial court properly concluded that it had had the authority to give the instruction to cure potential prejudice caused by defense attorney's comments during closing statements. *See* Trial Ct. Op., filed 8/27/15, at 10-15. The comprehensive Trial Court Opinion properly addresses and disposes of the issue, and we adopt that portion of the trial court's opinion as our own. *See id.*

**Issue 7**

In his seventh issue, Appellant avers that the trial court committed reversible error by refusing to give Appellant's requested jury instruction pertaining to self-defense. Appellant's Brief at 5. This is a curious argument as Appellant's attorney withdrew the request for that jury instruction during trial, stating: "Judge, I'm going to rest. And I'm going to withdraw my request for a self-defense instruction[.]" N.T., Trial, 2/10/15, at 245. Later, Appellant's attorney stated: "I'm agreeing with the instruction. I'm not objecting to it. So it wouldn't be preserved for error anyway because I'm agreeing to it." *Id.* at 254.

We agree with the trial court that Appellant did not preserve this issue for appeal. In fact, Appellant's attorney specifically withdrew this issue for consideration on appeal. As stated above, issues not raised in the lower court are waived. Pa.R.A.P. 302(a). Appellant failed to object to the charge and therefore, failed to preserve this issue for review. *See Sanchez*, 82 A.3d at 978.

**Issue 8**

Lastly, Appellant argues that the trial court erred by failing to merge the sentences for Aggravated Assault and REAP. Appellant's Brief at 5. We disagree.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Quintua***, 56 A.3d 399, 400 (Pa. Super. 2012) (internal citation omitted). Further, "merger is a nonwaivable challenge to the legality of the sentence." ***Commonwealth v. Pettersen***, 49 A.3d 903, 911 (Pa. Super. 2012) (citation omitted).

The Sentencing Code dictates that two crimes should merge for sentencing purposes if (1) the crimes arise from a single criminal act **and** (2) all of the statutory elements of one offense are included in the statutory elements of the other offense. 42 Pa.C.S. § 9765 (emphasis added). In the instant case, the act supporting the offenses of Aggravated Assault and REAP is the same – Appellant punched Mr. Clark in the face causing his jaw to break. Accordingly, we must next compare the statutory elements of each offense.

The Pennsylvania Crimes Code defines Appellant's Aggravated Assault offense as follows: "A person is guilty of aggravated assault if he…attempts to cause serious bodily injury to another, or causes such injury intentionally,

- 11 -

knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. §2702 (a)(1). REAP is defined as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. §2705.

This Court has recently held that Aggravated Assault and REAP do **not** merge for purposes of sentencing because "each offense requires proof of an element that is absent from the other offense, and one offense can be committed without committing the other offense." ***Commonwealth v. Ciani***, 130 A.3d 780, 783 (Pa. Super. 2015). In ***Ciani***, we reasoned that "[a]ggravated assault contains an element missing from REAP – serious bodily injury or an attempt to cause serious bodily injury." ***Id.*** at 782. We concluded that "unlike aggravated assault, REAP requires the element of actual danger of death or serious bodily injury. An individual could attempt to cause serious bodily injury to another person without placing that person in actual danger, which would support a conviction for aggravated assault but not REAP." ***Id.*** at 783.

Accordingly, Aggravated Assault and REAP do **not** merge for sentencing purposes. The trial court properly sentenced Appellant to an aggregate term of four to eight years' incarceration for Aggravated Assault, merging the sentence for Simple Assault, plus a consecutive term of one year special probation for REAP. Trial Ct. Op., filed 8/27/15, at 1, 23.

Because we adopt the Trial Court Opinion filed 8/27/15 with respect to issues 1 through 4 and 6, the parties are directed to include that opinion with any future filings.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge Strassburger joins this Memorandum.

Judge Mundy concurs in the result.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2016

Circulated 04/29/2016 09:42 AM

COMMONWEALTH OF
PENNSYLVANIA

: IN THE COURT OF
: COMMON PLEAS OF
: OF LACKAWANNA COUNTY
:
vs.                                            : CRIMINAL DIVISION
:
:
ROBERT HARES                        : No. 2014 CR 2460

**OPINION PURSUANT TO Pa.R.A.P. 1925(a)**

**BISIGNANI MOYLE, J.**

### I.    INTRODUCTION/PROCEDURAL HISTORY

Defendant Robert Hares (hereinafter referred to as "Defendant") has appealed various rulings made by this Court during the course of his trial, as a result of which he was convicted of one (1) count of Aggravated Assault, (18 Pa.C.S.A §2702(a)(1)) one (1) count of Simple Assault, (18 Pa.C.S.A § 2701(a)(1)) and one (1) count of Recklessly Endangering Another Person (18 Pa.C.S.A § 2705). On May 8, 2015 this court sentenced Defendant to an aggregate term of four years (4) to eight (8) years at a State Correctional Institute plus one (1) year of special probation.

Defendant filed various post-sentence motions, which included a Motion for Judgment of Acquittal and/or New Trial and Motion for New Trial. This Court issued an Order on May 28, 2015 denying Defendant's post-sentence motions. Defendant filed a Notice of Appeal on June 12, 2015. This Court issued an Order on June 24, 2015, directing Defendant to file a Concise Statement of Matters Complained of on Appeal Pursuant to

1

Pa.R.A.P.1025(b). Defendant issued his Concise Statement of Matters Complained of on Appeal on July 1, 2015. The Court will address each issue per Pa.R.A.P. 1025(a).

## II.    FACTUAL HISTORY

The evidence at trial demonstrated as follows:

On November 3, 2014, an argument broke out at the home of Bessie Hares, Robert Hares' former wife. N.T. 2/10/15 at pg. 54, 64. Around 5:00 p.m. on that date, Bessie Hares and her paramour, James Clark, the victim in this case, had a discussion regarding Defendant still residing in Bessie Hares' home and how Ms. Hares lacked the funds to evict Defendant. N.T. 2/10/15 at pg. 55. During the course of this conversation, according to the testimony of Ms. Hares, she became upset, and asked Mr. Clark to leave the home. N.T. 2/10/15 at pg. 55. According to the testimony of Ms. Hares, while Mr. Clark was packing his belongings to leave, Defendant returned home around 9:30 or 10:00 p.m. with two other individuals, Crystal Macomber and Dallas Zipatelli. N.T. 2/10/15 at pg. 55. Ms. Hares testified that while Mr. Clark was gathering his belongings, Defendant approached Mr. Clark and asked him to leave the home. N.T. 2/10/15 at pg. 63. Mr. Clark "mumbled" something to Defendant in response. N.T. 2/10/15 at pg. 55. Mr. Clark testified that no one had asked him to leave, but when Defendant arrived home he approached him, grabbed him, lifted his chin, stated "you deserve this" and began to strike him from the right hand side. N.T. 2/10/15 at pg. 55, 150. At that point, Mr. Zipatelli struck Mr. Clark from the other side. N.T. 2/10/15 at pg. 122, 123. Defendant, along

2

with Mr. Zipatelli, punched Mr. Clark about "five (5) times." N.T. 2/10/15 at pg. 66. Mr. Clark did not attempt to fight back. N.T. 2/10/15 at pg. 55, 125. At the end of the fight, Defendant informed Mr. Clark that he had "two minutes to get the rest of [his] stuff and leave." N.T. 2/10/15 at pg. 125. Mr. Clark stated he was surprised by the attack from the Defendant. N.T. 2/10/15 at pg. 150.

As a result of the attack, Mr. Clark suffered a fractured jaw, one of his teeth was knocked out, and he had severe bruising to his face. N.T. 2/10/15 at pg. 136, 137, 139. As a result of the fractured jaw, Mr. Clark had surgery, and his jaw was wired shut for about six (6) weeks. N.T. 2/10/15 at pg. 139. This led to Mr. Clark losing about twenty five (25) to thirty (30) pounds, bringing his weight down to about one hundred thirty five (135) pounds. N.T. 2/10/15 at pg. 139,141. During this period of time, Mr. Clark could not speak. N.T. 2/10/15 at pg. 140. He also had to carry a pair of pliers with him at all times in case he had to snip the wires himself if he became nauseous and had to vomit. N.T. 2/10/15 at pg. 144.

### III.   MATTERS COMPLAINED OF ON APPEAL

Defendant has raised eight (8) matters complained of on appeal. They are as follows:

1. Whether the evidence presented was insufficient to support the verdicts when the Commonwealth provided sufficient evidence to establish the basic elements of each of the charged offenses but failed to rebut the Defendant's defense of defense of property?

2. Whether the verdicts were against the weight of the evidence and thereby any finding by the jury that the Defendant did not act in defense of property was contrary to the weight of the evidence?

3

3. Whether the trial court erred when it barred the Defendant from introducing evidence that he was aware of the fact that his ex-wife had accused Clark of raping her earlier that year, thus precluding evidence relevant to the Defendant's state of mind when striking him?

4. Whether the jury instructions regarding Defendant's decision not to call eye witnesses was prejudicial, unconstitutional, and contrary to the law, based on the fact the Defendant bears no burden in a criminal trial?

5. Whether the trial court acted outside of its authority and prejudiced the jury, when without any objection on behalf of the Commonwealth, it sua sponte objected to defense counsel's closing argument and instructed the jury on Defendant's failure to call eye witnesses?

6. Whether the trial court committed prejudicial error when, over Defendant's objection, the court permitted Clark's sister to testify since her testimony was irrelevant, inflammatory and cumulative?

7. Whether the trial court committed reversible error when the court failed to give the jury instruction requested by the Defendant pertaining to the defense of self-defense?

8. Whether the trial court erred by failing to merge the sentences of Aggravated Assault, 18 Pa. C.S.A §2702(a)(1), and Recklessly Endangering Another Person, 18 Pa. C.S.A. §2705?

## IV.    DISCUSSION

Pursuant to Pa.R.A.P. 1025(a), the Court will address each issue complained of on appeal by Defendant.

### A. The Commonwealth Presented Sufficient Evidence to Rebut Defendant's Defense of Defense of Property and The Verdicts of Guilty Returned by the Jury that Defendant did not Act in Defense of Property Were Not Contrary to the Weight of the Evidence.

Defendant's first two errors complained of on appeal regard Defendant's defense of property justification defense and shall be addressed by this Court

4

in tandem. During the course of Defendant's trial, this Court allowed Defendant to present evidence in support of his defense of Defense of Property. This Court subsequently instructed the jury regarding the Defense of Property. Because this Court allowed Defendant to present evidence of justification, it became the Commonwealth's burden, beyond a reasonable doubt, to prove that Defendant did not act in justifiable defense of property. Defendant alleges, on appeal, that the Commonwealth did not meet this burden and did not provide sufficient evidence to rebut Defendant's defense of defense of property.

The Pennsylvania Crimes Code "embraces the concept that conduct which would otherwise constitute a crime can be excused when necessary to prevent a greater harm or crime." Com. v. Berrigan, 501 A.2d 226, 229 (Pa. 1985). However, Section 507 of the Crimes Code provides in relevant part:

> "(a) Use of force justifiable for protection of property.—The use of force upon or toward the person of another is justifiable when the actor believes that such force is immediately necessary:
>
>> (1) to prevent or terminate an unlawful entry or other trespass upon land or a trespass against or the unlawful carrying away of tangible movable property, if such land or movable property is, or is believed by the actor to be, in his possession or in the possession of another person for whose protection he acts....
>
> (c) Limitations on justifiable use of force.—
>
>> (1) The use of force is justifiable under this section only if the actor first requests

5

the person against whom such force is used to desist from his interference with the property, unless the actor believes that:

(i) such request would be useless;

(ii) it would be dangerous to himself or another person to make the request; or

(iii) substantial harm will be done to the physical condition of the property which is sought to be protected before the request can effectively be made."

18 Pa.C.S.A. § 507

The evidence at trial demonstrated that the Commonwealth presented sufficient evidence to rebut Defendant's defense of defense of property. Defendant's argument that the Commonwealth did not meet its burden fails for several reasons.

The jury was presented with two factual scenarios regarding the incident that resulted in Mr. Clark's injuries. The jury was free to believe either Mr. Clark had been asked to leave by Bessie Hares, as she testified, and was packing his belongings to leave, or that, as Mr. Clark testified, he had not been asked by anyone to leave.

Under the first scenario, 18 Pa.C.S.A. § 507 (a)(1) provides that the use of force to stop an unlawful trespass must be immediately necessary. If Mr. Clark was packing his belongings, there was no immediate need for the use of force. Mr. Clark was welcomed in Defendant's home for several

6

months prior to the attack. Mr. Clark was not a stranger and was not destructive. There was no immediate need to use force to expel Mr. Clark from the property.

Under the second scenario, even if Mr. Clark was not packing his things to leave and had not been asked to leave, there was no immediate threat that required force to eject Mr. Clark to the property. Under 18 Pa.C.S.A. § 507(c)(1), "the use of force is justifiable under this section only if the actor first requests the person against whom such force is used to desist from his interference with the property." Thus, Defendant had to ask Mr. Clark to vacate the premises unless one of the following three (3) exceptions applied:

> "(i) such request would be useless; (ii) it would be dangerous to himself or another person to make the request; or (iii) substantial harm will be done to the physical condition of the property which is sought to be protected before the request can effectively be made."

18 Pa.C.S.A. § 507(c)(1)(i);(ii);(iii)

There is no indication that asking Mr. Clark to leave would have been useless. Further, no evidence was presented to suggest that it would be dangerous to make such request. Finally, no evidence was presented to establish any harm would be done to the property if a request for Mr. Clark to vacate the premises was made. If Mr. Clark had not been asked to leave, he could not have known that any individual in the home did not want him there, as he had been a welcome guest for months. A simple request to leave could have alleviated any need to use force. Under both scenarios, there was no need to use force on Mr. Clark to eject him from the property.

7

Therefore, it is clear to this Court that based on the evidence presented, the Commonwealth presented sufficient evidence to rebut Defendant's defense of defense of property and the verdicts of guilty returned by the Jury that Defendant did not act in defense of property were not contrary to the weight of the evidence.

### B. The Trial Court Did Not Err in Precluding Evidence that Defendant's Ex-Wife had accused the Victim, James Clark, of Defendant's Assault, of Rape.

At the pretrial conference on February 6, 2015 before this Court, the Commonwealth made a motion to exclude any reference of a rape allegation by Defendant's former wife, Bessie Hares, against the victim in this case, James Clark. Defendant opposed the Commonwealth's motion, and argued two (2) possible scenarios of how the allegation made by Ms. Hares would be admissible. N.T. 2/06/15 at pgs. 18-22. First, Defense counsel argued that he should be able to impeach Ms. Hares on cross examination by questioning her about the allegation of rape. N.T. 2/06/15 at pgs. 15-16. Second, Defense counsel argued that should the Defendant testify, the testimony would be admissible as to his state of mind at the time he hit the victim. N.T. 2/06/15 at pg. 20. Defense counsel argued the rape allegation has probative value because it was in Defendant's mind at the time of the attack and argued that Defendant discussed the rape allegation with the police the day after the alleged crime. N.T. 2/06/15 at pg. 22.

The first step in determining whether the rape allegation made by Ms. Hares is admissible at trial is determining whether the allegation is relevant

under Pa. R.E. 401, and if so does its probative value, under Pa.R.E. 403, outweigh a danger of one or more of the following: "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

In the case at hand, the rape allegation may have been relevant to show the Defendant's state of mind at the time of the attack on the victim, Mr. Clark. However, the next step in determining the admissibility of this evidence is to determine whether any rules of evidence preclude the admission of this evidence.

This Court ruled that Defendant would not be permitted cross-examine Ms. Hares regarding the rape allegation pursuant Pa. R.E. 608(b); which provides:

> (1) the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct; however,
>
> (2) in the discretion of the court, the credibility of a witness who testifies as to the reputation of another witness for truthfulness or untruthfulness may be attacked by cross-examination concerning specific instances of conduct (not including arrests) of the other witness, if they are probative of truthfulness or untruthfulness; but extrinsic evidence thereof is not admissible
>
> Pa.R.E. 608(b)

Therefore, before defense counsel would be permitted to cross-examine a witness regarding Ms. Hares' alleged claim of rape, that witness would have to be vouching for Ms. Hares credibility. Under those circumstances, it would be potentially permissible to question the witness

9

about the false rape allegations. However, no witness was called to vouch for Ms. Hares' veracity.

Regarding the second scenario proffered by the Defendant, this Court ruled if Defendant decided to take the stand, this Court would then entertain Defendant's motion to introduce the prior rape allegation as evidence of the Defendant's state of mind. N.T. 2/06/15 at pg. 22. However, Defendant never testified, so the issue is moot. Therefore, Defendant's argument is without merit.

In conclusion, Defendant's claim of error regarding this issue is without merit.

### C. The Jury Instructions Given by this Court regarding Defendant's Decision Not to Call Witnesses Were Not Prejudicial, Unconstitutional, or Contrary to the Law and the Trial Court Did Not Act Outside of its Authority when the Court Called a Sidebar During Defendant's Closing Argument and Subsequently issued Jury Instructions based on Defendant's Closing Argument.

Defendant's fourth and fifth matters complained of on appeal both regard this Court's jury instructions given as a result of statements made by Defense Counsel during his closing argument. Therefore, they shall be addressed in tandem.

During Defense counsel's closing argument, he stated:

> "I didn't have to put on any evidence. I chose to call Crystal. Okay. They didn't call these other eyewitnesses to the stand. They didn't call Dallas and they didn't call Brian.
>
> Now, Attorney Lafferty might tell you, well, neither did Attorney Parkins. But, yeah, not my burden. They have the burden. It's their responsibility to put on the evidence.

10

So what's the inference as to why they didn't call those witnesses? Bad for them. They support justification."

N.T. 2/11/15 at pg. 22.

Further, Defense counsel stated:

"Punching him a few times to get him to leave the house is not unreasonable. I mean if it were my house, he might be leaving with a gunshot wound."

N.T. 2/11/15 at pg. 25.

At the completion of Defense Counsel's closing argument, this Court called Defense Counsel and the Assistant District Attorney for a sidebar conference. This Court expressed concern during the conference because Defense counsel had listed Dallas Zipatelli as a witness on his witness list, but did not call him because Mr. Zipatelli was a co-defendant and he had stated it was his (Dallas Zippatelli) intent to invoke his fifth amendment right to remain silent. N.T. 2/11/15 at pgs. 27-28. Further, the Court expressed concern that Defense Counsel made the above statement regarding the gunshot. N.T. 2/11/15 at pg. 30. The Court expressed concern that this statement would leave the jurors with the impression that any amount of force, even deadly force, can be used to stop an unlawful trespass. N.T. 2/11/15 at pg. 30. After the sidebar conference, the Court instructed the jurors as follows:

"Ladies and gentleman, before we turn to the District Attorney's closing argument, there are two matters that I just want to give you some instruction on.

During closing argument, Attorney Parkins referenced two witnesses who were not called: Dallas Zipatelli and Brian Belles. And his argument was that the Commonwealth didn't call them as witnesses, and, therefore, you, the jury, may properly draw, from their failure to call those two witnesses, an

11

inference. That if they were called, their testimony would be adverse to the Commonwealth.

My instruction to you, with respect to that line of argument, is, with respect to Dallas Zipatelli, you are to disregard the comment and the argument regarding drawing any adverse inference against the Commonwealth's failure to call Dallas Zipatelli. Okay.

The second point that I need to raise with you, is, in my final instructions, I'm going to read to you the entire law on justification.

And as I mentioned earlier, the final instructions are complicated. We stayed here last night long after you left, ironing out word-for-word, to make sure that the jury instruction I'm going to read to you this morning is in accordance with Pennsylvania Law.

Attorney Parkins touched on it during his closing argument, and I can imagine Attorney Lafferty will touch on it in her closing argument.

What I must tell you, is, it's my version of the statute, when I read it to you, is what will control you. But the attorneys are permitted to touch upon the law and tell you what the law is. So I'm not suggesting that you shouldn't listen to that aspect of it. But I do need to make a point of clarification about a point that was made.

Under the law in Pennsylvania, for justification, if you are in your own home, there are two types of defenses available to you – or two different sets of circumstances contemplated by the law: Use of deadly force to protect your property; and use of non-deadly force to protect your property.

Two separate laws. Each one concerns two very different sets of circumstances.

So everyone agrees, the only circumstances, in this case, that apply are the use of non-deadly force. So I'm going to ask you to disregard the comment, because it would tend to confuse you on this issue, that 'if it were me, I would have used a gun,' because that is when you use deadly force in protecting your property, which has a whole host of other requirements before a homeowner can resort to non-deadly force.

12

So, in giving you this instruction, I do not want you to be left with the impression that anyone can use deadly force, under any circumstances, in protecting their home. That's not the case.

There are two different sets of circumstances. If a person used deadly force, you have to look at those circumstances to see that it's justifiable. But if you try to put them in the same category, it's confusing and can be misleading.

So just disregard the comment about the firearm. It has nothing to do with this case. It has nothing to do with the circumstances."

N.T. 2/11/15 at pg. 32-36.

Defense Counsel then asked for a clarification from this Court:

"Judge, just as a clarification to the first one, is that they can't draw an inference from the Commonwealth's failure to call Dallas, but they may draw an inference from the failure to call Brian Belles"

N.T. 2/11/15 at pg. 36.

This Court responded:

"And the Commonwealth may properly argue that the jury may call an adverse inference from the Defendant's failure to call him as well..... but, as far as Dallas Zipatelli, the jurors are not to call an adverse inference to either side for the failure to have him called as a witness.

N.T. 2/11/15 at pg. 36.

The Pennsylvania Rules of Criminal Procedure clearly state that "[t]he trial judge may give instructions to the jury before the taking of evidence or at *anytime* during the trial as the judge deems necessary and appropriate for the jury's guidance in hearing the case." Pa. R.Crim.P No 647(D) (emphasis

13

added.). Further, a trial court may *sua sponte* give a cautionary instruction to the jury to disregard remarks made by a prosecutor or defense attorney in order to cure potential prejudice. Commonwealth v. Chimenti, 524 A.2d 913, 924 (Pa.Super. 1987), *appeal denied* 533 A.2d 711 (Pa. 1987).

Moreover, a missing witness instruction is only available in certain circumstances. This instruction allows the jury to draw an adverse inference from the absence from a potential material witness who is available. Commonwealth v. Culmer, 604 A.2d 1090, 1098 (Pa. 1992). "In order for the instruction to be invoked against the Commonwealth[,] the witness must be available only to the Commonwealth." Id. In order to determine whether a witness was "available" only to a party, the trial court must ascertain whether the witness was "peculiarly within the knowledge and reach" of that party. Commonwealth v. Boyd, 514 A.2d 623, 626 (Pa.Super. 1986) *appeal denied*, 531 A.2d 427 (1987); Commonwealth v. Newmiller, 409 A.2d 834, 839 (Pa. 1979).

In Newmiller, counsel for both parties, in their summation, argued the issue of a missing witness to the jury and the trial court explained the missing witness rule to the jury during its charge. Newmiller, 409 A.2d at 839. The Pennsylvania Supreme Court held:

> "as no evidence was presented to the jury that the witness was within either parties' reach, the court should, as a matter of law, have instructed the jury to disregard counsels' arguments and not apply the missing witness rule." Id. Thus, by charging as it did, the court permitted the jury to speculate on whether or not to draw the adverse inference. As such that portion of the charge was erroneously given. We further can find no reasonable basis for trial counsel's failure to object to the

14

charge. As we believe appellant was denied effective assistance of trial counsel, he is entitled to a new trial. Id.

In the case at hand, no evidence was presented to show that either witness was only available to the Commonwealth. Culmer, 604 A.2d at 1098. In fact, Defense Counsel indicated he would be calling Dallas Zipatteli as a witness, so the Commonwealth chose not to. But then informed the Court that they would not be calling Mr. Zippatelli, because he intended to invoke his right to remain silent. Furthermore, after a thorough review of the record, we are unable to find any evidence which establishes that Brian Belles was 'peculiarly within the knowledge and reach' of the Commonwealth such that the jury might be permitted to draw the inference that Mr. Belles' testimony would have been unfavorable to the Commonwealth. Newmiller, 409 A.2d at 839; Bentivoglio v. Ralston, 288 A.2d 745, 748 (Pa. 1972). According to the Assistant District Attorney, Mr. Belles was subpoenaed by the District Attorney's office but she did not have a reason to call him. N.T. 2/10/15 at p. 173. There was no indication that Mr. Belles was out of reach of the defense or that the defendant could not call him as a witness. Absent such evidence that the potential witnesses must be 'available to only one of the parties' has not been satisfied.

Further, Mr. Zipatteli expressed his intention to invoke his fifth amendment right, so neither side could call him as a witness, further prohibiting the inclusion of a missing witness instruction.

15

Finally, it is clear, based on the Pennsylvania Rules of Criminal Procedure and the relevant Pennsylvania Case Law, that the trial court may give a cautionary instruction to the jury to disregard remarks made by a prosecutor or defense attorney in order to cure potential prejudice. Chimenti, 524 A.2d at 924. Because Defense Counsel's statements were misapplications of the law to the jury for the reasons stated above, it was within this Court's purview to give cautionary instructions regarding the remarks to the jury in order to cure any potential prejudice. Therefore, in sum, Defendant's claim of error regarding these issues is without merit.

### D. The Trial Court Did Not Commit Error when the Trial Court Permitted Mr. Clark's Sister to Testify.

During the Defendant's trial, the Commonwealth called the victim's sister, Michelle Jenkins, to testify. N.T. 2/10/15 at p. 175. Ms. Jenkins testified as to the condition her brother, Mr. Clark, was in after the assault by Mr. Hares. During the course of her testimony, Defense Counsel objected to the relevancy of the questioning. N.T. 2/10/15 at p. 181.

The first step in determining whether the testimony of Ms. Jenkins is admissible at trial is determining whether the testimony is relevant under Pa. R.E. 401, and if so is its probative value, under Pa.R.E. 403, outweighed by a danger of one or more of the following: "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The testimony of Ms. Jenkins was clearly relevant to the case at hand. In order to prove Aggravated Assault under 18 PA. C.S.A. 2702(1), the Commonwealth must prove that the Defendant "attempted to cause serious

16

bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." The Pennsylvania Standard Criminal Jury Instructions define serious bodily injury as "bodily injury that creates a substantial risk of death or that causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 15.2702B (Crim) Aggravated Assault--Causing Serious Bodily Injury, Pa. SSJI (Crim), §15.2702B (2015). Therefore, the Commonwealth must demonstrate that the injury suffered by the victim rose to the level of serious bodily injury, as defined by Pennsylvania law.

The testimony of Ms. Jenkins was offered as evidence of the serious bodily injury Mr. Clark suffered. For example, Ms. Jenkins testified, speaking about Mr. Clark's injuries the day after the assault, as follows:

> Assistant District Attorney: "[W]hat, if anything, did you notice about the injuries in comparison to what you had seen earlier in the day?"
>
> Ms. Jenkins: "They were worse. The swelling in the jaw, in particular was worse. Yes.
>
> Assistant District Attorney: "So that prompted you to take him to the Police Department?"
>
> Ms. Jenkins: "Yes."
>
> N.T. 2/10/15 at p. 178

> Ms. Jenkins further testified:
>
> "[Mr. Clark] had to carry wire clippers with him because of the fact that he had to puree his food and if at some point he started to choke, he would have to use these clippers….because of the mesh caging.

17

N.T. 2/10/15 at p. 183

The testimony of Ms. Jenkins was relevant to demonstrate the injuries suffered by the victim, Mr. Clark, constitute serious bodily injury. This testimony established the pain and suffering of the victim. The testimony was not prejudicial, cumulative or inflammatory. The testimony was offered for the limited purpose of establishing the serious injuries suffered by the victim. Therefore, Defendant's claim of error regarding this issue is without merit.

### E. The Trial Court Did Not Commit Error when the Trial Court Did not Instruct the Jury Regarding the Defendant's Requested Jury Instruction regarding Self-Defense.

On appeal, Defendant argues that this Court did not give Defendant's requested jury instruction regarding self-defense and defense of property. However, during a lengthy discussion on the record with Defense Counsel, the Defendant, the Assistant District Attorney and this Court, out of the presence of the jury, the Defendant stipulated to the jury instruction given by this Court regarding defense of property. N.T. 2/10/15 at pgs. 251- 320. This Court put together a jury instruction with input from both attorneys, who stipulated to this Court reading that instruction.

"[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue." Com. v. Houck, 102 A.3d 443, 451 (Pa.Super. 2014), reargument denied (Nov. 25, 2014). In Commonwealth v. Pressley, 887 A.2d 220, 224 (Pa.Super. 2006), the Court stated, that:

18

"The pertinent rules, therefore, require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue."

Pressley, 887 A.2d at 224

The record reflects that Defendant agreed to and assisted the court in drafting the jury instruction. This discussion spans almost seventy (70) pages of transcript. N.T. 2/10/15 at pgs. 251- 320. Defense Counsel is precluded from now objecting to the jury instruction. As the Pennsylvania Superior Court stated in Pressley, "a specific objection is required…. , it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue. Pressley, 887 A.2d at 224. This Court consulted with the attorneys and the Defendant to come to a mutually agreeable instruction that would not burden the appellate courts on review, and now Defendant raises an objection to the instruction. Defendant's "failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue." Houck, 102 A.3d at 451. Defendant failed to object to the instruction at the appropriate time during trial. Therefore, his ability to appeal this issue is waived and this issue on appeal is without merit.

However, if it is found that Defendant has not waived this objection, it is still without merit, because no evidence was presented to set forth a self-defense theory for Defendant.

In a criminal matter, the defendant does not have the burden of proving a claim of self-defense. Commonwealth v. Black, 376 A.2d 627, 630 (Pa. 1977); Commonwealth v. Mayfield, 585 A.2d 1069, 1071 (Pa. Super. 1991). However, before a claim of self-defense may be placed before the trier of fact, there must be some evidence, from whatever source, to justify a finding of self-defense. Commonwealth v. Torres, 766 A.2d 342, 345 (Pa. 1999); If there is such evidence, then the burden is placed upon the Commonwealth to disprove the claim of self-defense beyond a reasonable doubt. Commonwealth v. Samuels, 590 A.2d 1245, 1247 (Pa. 1991).

There was no evidence presented at trial, from any source, that suggested Defendant was acting in self-defense. The evidence demonstrated that Defendant and Dallas Zipatteli approached James Clark and began punching him in the face and body. There was no evidence to suggest that Mr. Hares was defending himself. Therefore, if it is determined that Defendant did not waive his objection, this issue on appeal is still without merit, because no evidence was presented to set forth a self-defense theory for Defendant.

### F. The Trial Court Did Err by Failing to Merge the Sentences of Aggravated Assault and Recklessly Endangering Another Person and asks This Court to Remand for Resentencing.

Defendant alleges on appeal that the trial court erred by failing to merge the sentences of Aggravated Assault, 18 Pa. C.S.A §2702(a)(1), and Recklessly Endangering Another Person, 18 Pa. C.S.A. §2705

20

Section 9765 of the crimes code, *Merger of Sentences,* provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa. C. S. A. § 9765

This Court recognizes that after the enactment of section 9765 of the Crimes Code, Pennsylvania law requires a "pure statutory elements approach" to evaluating merger for sentencing purposes. Commonwealth v. Yeomans, 24 A.3d 1044, 1050 (Pa.Super. 2011). "The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." Commonwealth v. Collins, 764 A.2d 1056, 1057-1058 (Pa. 2001). The test is "whether the elements of the lesser crime are all included within the elements of the greater crime, and the greater offense includes at least one additional element which is different, in which case the sentences merge, or whether both crimes require proof of at least one element which the other does not, in which case the sentences do not merge." Id.

Presently, Defendant challenges his sentences for Recklessly Endangering Another Person and Aggravated Assault. The Crimes Code defines appellant's offenses in pertinent part as follows:

2502. Recklessly Endangering Another Person

21

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa. C. S. A. § 2502

2702. Aggravated Assault

(a) Offense defined.--A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life

18 Pa. C. S. A. § 2702

The Pennsylvania Superior Court and the Pennsylvania Supreme Court have ruled that "[r]eckless endangerment is a lesser included offense of aggravated assault and where the evidence is sufficient to support a claim of aggravated assault it is also sufficient to support a claim of recklessly endangering another person." Commonwealth v. Smith, 956 A.2d 1029, 1036 (Pa. Super. 2008), citing Commonwealth v. Thompson, 739 A.2d 1023, 1028 n. 13 (Pa. 1999). In consideration of the cases above, the critical point in evaluating Defendant's claim is whether the offenses of REAP and Aggravated Assault arose from a single criminal act. If so, the offenses merge for sentencing purposes. Collins, 764 A.2d at 1057-1058.

The charges of Aggravated Assault and Recklessly Endangering Another Person of which Defendant was convicted did arise from a single incident, namely, Defendant's attack on James Clark. This Court acknowledges that this sentence is improper in light of the above authority.

22

This Court recognizes that an illegal sentence must be vacated. Commonwealth v. Randal, 837 A.2d 1211, 1214 (Pa. Super. 2003).

This Court imposed a sentence of one (1) year of special probation for the crime of Recklessly Endangering Another Person. This sentence was imposed consecutively to the sentence imposed for Aggravated Assault. In light of the negation of the REAP sentences and disruption of the trial court's sentencing scheme, the trial court should be provided the opportunity to fashion a sentence that is equal to or comparable in length to the original sentences, but based upon the remaining charges. This Court recognizes that when the sentence as to one count of a multi-count case should merge, then sentences for all counts should be vacated so that the court can restructure its entire sentencing scheme. Commonwealth v. Williams, 871 A.2d 254, 266 (Pa. Super. 2005). If permitted upon remand, this Court will immediately resentence Defendant.

## V. CONCLUSION

For the foregoing reasons, Defendant's request for relief should be DENIED except as to the sentence imposed by this Court. Upon remand, a new sentence shall be issued by this Court. An appropriate Order is attached.

_____ J.

23