J-S53012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                                         :                     PENNSYLVANIA
                                                         :
                         v.                              :
                                                         :
                                                         :
                                                         :
ERIKA ROSA                                   :
                                                         :
                    Appellant                   :    No. 941 EDA 2020

Appeal from the PCRA Order Entered March 3, 2020
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0006544-2011

BEFORE:   SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:                     **FILED:  MARCH 22, 2021**

Appellant, Erika Rosa, appeals from the March 3, 2020, order dismissing her petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

This Court set forth the following factual history on direct appeal:

> In December of 2010, the Thirty–Second Statewide Investigating Grand Jury began hearing evidence concerning a large scale heroin distribution ring operating in six counties within the Commonwealth—Philadelphia, Chester, Delaware, Montgomery, Perry and Bucks.  The Grand Jury issued three Presentments: Presentment No. 2, issued March 23, 2011[;] Presentment No. 8, issued June 21, 2011[;] and Presentment No. 18, issued October 13, 201[1].  Those Presentments collectively recommended the Attorney General arrest and prosecute 31 individuals, including [Appellant], for violations of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–113(a), and other offenses under the Crimes Code.   The Grand Jury

---

[*]  Retired Senior Judge assigned to the Superior Court.

identified Fausto Ezequiel Valdez–Cordero, AKA Jose Morales, AKA "Prima," AKA "Pepe," AKA "Keka," [(Valdez–Cordero)] as the head of this extensive heroin trafficking operation. The Grand Jury summarized the testimony as to [Appellant] as follows:

> Agent Riley interviewed [Appellant], who stated she was the girlfriend of [Valdez–Cordero]. She had been with Valdez–Cordero for eight (8) years. According to [Appellant], Valdez–Cordero had been selling heroin for the past five to six (5–6) years. [Appellant] admitted taking part in Valdez–Cordero's heroin business by translating drug customers' calls for Valdez–Cordero, a Spanish-speaking Dominican illegally residing in the United States. [Appellant] would ask the customers who they were, how much heroin they wanted to buy and where they needed the heroin delivered. [Appellant] also admitted to picking up drug money from customers.

*Presentment No. 8, pp. 2-3*.

At the time of her arrest, [Appellant] was charged with Possession with Intent to Deliver Heroin, Conspiracy to Delivery of Heroin, two counts of Corrupt Organizations and four counts of Criminal Use of a Communication Facility.[1] At the outset, [Appellant] agreed to fully cooperate with the investigating agents in identifying and arresting the others involved in this drug distribution ring and, initially, it appeared that she was in fact doing so. The extent of [Appellant's] cooperation was set forth in Presentment No. 8 and was confirmed by Agent Riley at the time of sentencing. The Presentment states:

> According to Agent Riley, agents intercepted numerous telephone calls from "Jerry," later identified as Gerald Felder. Felder is a mid-level dealer. Every few days, Felder would order between 50 and 100 bundles of heroin. … 100 bundles, or 1,400 packets, equals ten (10) racks, or approximately 42 grams of heroin. The cost for ten (10) racks would be

---

1 35 P.S. § 780-113(a)(30), 18 Pa.C.S. §§ 903, 911(b)(3,4), and 7512(a), respectively.

approximately $6,000. Thus, every few days, Felder was distributing up to 1,400 packets through his street-level dealers, then using part of the proceeds to purchase more heroin, thereby repeating the cycle.

On February 15, 2011, the date agents executed numerous search warrants, [Appellant] was interviewed by [agents of the Office of Attorney General, Bureau of Narcotics Investigation and Drug Control ("BNIDC")]. [Appellant] admittedly was supposed to pick up $14,000 in drug money from Gerald Felder. [Appellant] cooperated with the agents and placed a recorded telephone call to Felder, in which Felder made arrangements with [Appellant] to turn over the money. At the drop-off location, agents arrested Felder and seized from him $15,600.

As a result of [Appellant's] perceived cooperation, the Commonwealth agreed to *nol pros* six counts of the criminal information and further agreed not to invoke applicable mandatory minimum sentencing provisions.

***Commonwealth v. Rosa***, 83 A.3d 1068, 2086 EDA 2012, at *1-2 (Pa. Super.

filed August 20, 2013) (unpublished memorandum) (citing Trial Court Opinion,

10/5/12, at 1-3).

This Court set forth the following procedural history in its August 28,

2019 Judgment Order:

On February 13, 2012, Appellant entered an open guilty plea to corrupt organizations, conspiracy, and criminal use of a communication facility.[2] The court sentenced her on June 18, 2012, to an aggregate 13 to 26 years' imprisonment, and this Court affirmed the judgment of sentence on August 20, 2013. ***See*** [***Rosa***, 2086 EDA 2012].

---

2   18 Pa.C.S § 903(c) (as to 35 P.S.§ 780-113(a)(30)), 18 Pa.C.S. §§ 911(b)(4), and 7512(a), respectively.

> Appellant filed a timely, counseled PCRA petition on April 24, 2014. The court subsequently let original PCRA counsel withdraw, appointed new PCRA counsel, and granted Appellant *in forma pauperis* status. On December 30, 2014, counsel filed an amended petition. The court held a hearing on June 3, 2016[,] and denied relief on December 22, 2016. The court sent its order to counsel for the Commonwealth and to PCRA counsel, who was still counsel of record. On July 31, 2017, Appellant filed a *pro se* application for speedy disposition of her PCRA petition, which suggested she did not know the outcome of her petition. The court responded on August 15, 2017, informing Appellant that it had denied her petition on December 22, 2016, and sent a copy of that letter to PCRA counsel. Nothing in the record shows PCRA counsel contacted Appellant. Appellant then filed *pro se* correspondence asserting PCRA counsel had abandoned her, seeking appointment of new counsel, and requesting a copy of the order denying her petition. The court did not respond.
>
> On March 1, 2018, Appellant filed a notice of appeal. This Court issued a rule to show cause why the appeal should not be dismissed as untimely. Appellant responded that she did not know the court had denied her petition until she received the court's letter. On November 9, 2018, this Court discharged the rule and referred the issue to the merits panel.

*Commonwealth v. Rosa*, 221 A.3d 321, 2095 EDA 2018, at *1 (Pa. Super. filed August 28, 2019) (non-precedential judgment order) (footnotes omitted). On appeal, this Court found the record supported Appellant's claim of abandonment by counsel and held she had the right to counsel for her first PCRA petition through the entire appellate process. *Id*. (citing *Commonwealth v. Robinson*, 970 A.2d 455, 457 (Pa. Super. 2009) (*en banc*)). This Court found that "under these circumstances, the best resolution of the case is to vacate and remand for a full hearing per *Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998)." *Rosa*, 2095 EDA 2018 (non-precedential judgment order at *2).

- 4 -

Pursuant to this Court's instructions, the trial court appointed counsel to represent Appellant and held a *Grazier* hearing on February 14, 2020. At the hearing, Appellant informed the court that she wanted to proceed with appointed counsel.

Following remand, no additional claims were raised by Appellant, and the PCRA court reinstated the December 22, 2016 order denying Appellant's PCRA petition on March 3, 2020. Appellant filed a timely appeal. The PCRA Court directed Appellant to file a Statement of Matters Complained of on Appeal by order dated April 6, 2020. Appellant filed her statement on April 28, 2020. On May 18, 2020, the PCRA court filed its opinion, in which it noted that Appellant had not raised any new issues in the current appeal that were not addressed in the court's earlier PCRA opinion filed on April 11, 2019. Therefore, the PCRA court attached the April opinion and noted Appellant's PCRA petition was denied for the reasons discussed therein.

Appellant presents the following questions for our review:

1. Did the trial court err in denying Appellant's Post Conviction Relief Act claim that her guilty plea was unlawfully induced due to the ineffective assistance of counsel, given that her counsel was unprepared, and gave erroneous and factually insufficient information regarding potential outcome[s] of her guilty plea?

2. Did the trial court err in denying Appellant's Post Conviction Relief Act claim that her guilty plea was involuntary because the Commonwealth [breached] the plea agreement by playing a tape that inflamed the Judge to give a maximum sentence, rather than a mitigating sentence?

Appellant's Brief at 4.

We apply the following standard and scope of review when reviewing the propriety of a denial of a PCRA petition:

"An appellate court reviews the PCRA court's findings to see if they are supported by the record and free from legal error. The court's scope of review is limited to the findings of the PCRA court viewed in the light most favorable to the prevailing party." **Commonwealth v. Fitzgerald**, 979 A.2d 908, 910 (Pa. Super. 2009) (quoting **Commonwealth v. Hammond**, 953 A.2d 554, 556 (Pa. Super. 2008)) (citation omitted). "Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo*." **Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted).

**Commonwealth v. Sarvey**, 199 A.3d 436, 445-446 (Pa. Super. 2018).

In support of her first issue on appeal, Appellant argues that the PCRA court erred when it found that her guilty plea was not unlawfully induced due to the ineffectiveness of her counsel. Appellant's Brief at 25. Specifically, Appellant avers that counsel was unprepared and provided factually insufficient information regarding the potential outcome of her plea. **Id**.

When reviewing a claim of ineffective assistance of counsel, we apply the following tenets and test:

Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. In Pennsylvania, we have refined the **Strickland** [**v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] performance and prejudice test into a three-part inquiry. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **See** [**Commonwealth v.**]

- 6 -

> *Pierce*[, 515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. If a petitioner fails to prove any of these prongs, his claim fails. Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Commonwealth v. Charleston*, 94 A.3d 1012, 1019 (Pa. Super. 2014). Further, "[a] court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ineffectiveness test, the court may proceed to that element first." *Commonwealth v. Tharp,* 101 A.3d 736, 747 (2014) (citation omitted). "Moreover, prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Spotz*, 896 A.2d 1191, 1226 (Pa. 2006). As our Supreme Court has long stated, claims of ineffective assistance of counsel are not self-proving. *Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002). A PCRA petitioner must present appropriate argumentation relative to all three prongs of the ineffectiveness standard. *Commonwealth v. D'Amato*, 856 A.2d 806, 812 (Pa. 2004).

The right to effective assistance of counsel extends to the plea process. *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002). We have clarified, however, that:

> allegations of ineffectiveness with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Wah*, 42 A.3d 335, 338-339 (Pa. Super. 2012) (citations, brackets, and quotation marks omitted). "Thus, to establish prejudice, the defendant must show that there is a reasonable probability but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Commonwealth v. Brandt*, 74 A.3d 185, 192 (Pa. Super. 2013).

Appellant avers that pursuant to *Hickman*, counsel was ineffective. Appellant's Brief at 31. We disagree. In *Hickman*, this Court found that in order to show prejudice, "the defendant must show that it is reasonably probable that, but for trial counsel's errors, he would not have pleaded guilty and would have gone to trial." *Hickman*, 799 A.2d at 141. Appellant has not shown that but-for counsel's alleged errors, she would not have pled guilty. Indeed, in the summary of her argument in her brief before this Court, Appellant acknowledges that the evidence was overwhelming. Appellant's Brief at 22. Thus, she cannot show prejudice as required by *Hickman* and our ineffective assistance of counsel jurisprudence.

Moreover, in **Hickman**, we found that the appellant's counsel's performance was not within "the wide range of professionally competent assistance," where counsel's advice was based on counsel's ignorance of relevant sentencing law. We stated:

> [P]lea counsel gave Appellant reason to believe he could be released from prison in two years and be eligible for parole six months later, when, in fact, Appellant was statutorily ineligible for release into the boot camp program and could not receive parole until he had served four years imprisonment."

**Hickman**, 799 A.2d at 141. Here, Appellant does not argue that counsel was unaware of the relevant sentencing law. Instead, she avers counsel was ineffective because he failed to: explain the sentencing guidelines and outcomes to Appellant; inquire as to what the Commonwealth intended to present at sentencing; argue the lack of cooperation was prior to the guilty plea; appreciate the Commonwealth's position on sentencing; and "in all material ways to prepare himself for sentencing." Appellant's Brief at 31-32.[3]

---

[3] Appellant posits that her plea counsel "fumbled the ball when it came to sentencing." Appellant's Brief at 28. Appellant admits that her trial counsel discussed Appellant's sentence with the Commonwealth in an attempt to negotiate the terms of her sentence, but the Commonwealth refused to negotiate. **Id**. (citing N.T. (PCRA), 6/3/16, at 29)). Although Appellant may not be pleased with her sentence and believes counsel "fumbled the ball," it is well established that "[t]he law does not require than an appellant be pleased with the results of the decision to enter a guilty plea; rather all that is required is that Appellant's decision to plead guilty be knowingly, voluntarily and intelligently made." **Commonwealth v. Brown**, 48 A.3d 1275, 1277 (Pa. Super. 2012).

- 9 -

A review of the record addresses a number of Appellant's allegations of counsel's ineffectiveness and error. We have repeatedly held a "defendant is bound by statements made during the plea colloquy, and a defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pled." **Commonwealth v. Brown**, 48 A.3d 1275, 1277 (Pa. Super. 2012). During her plea, Appellant agreed that she understood the elements of the charges against her, that the court could sentence her to the maximum sentence for each count, and that those sentences could run consecutively to one another and not concurrently. N.T. (Guilty Plea), 2/13/12, at 72, 79. Appellant further responded that no one forced her or made promises to her to plead guilty, that she was guilty of the crimes to which she pled and she pled guilty voluntarily and of her own free will. **Id**. at 80. Appellant also affirmed that she and her counsel discussed the sentences and charges she faced, that counsel provided her with the information necessary to determine whether to plead guilty, and that she was satisfied with counsel's representation. **Id**. at 81-82.[4] Further, at the PCRA hearing, Appellant stated that she was aware that there was no agreement as to her sentence. N.T.

---

[4] During her guilty plea, Appellant also agreed that her voice was intercepted on several telephone calls regarding heroin trafficking and that she has a distinctive and recognizable voice. N.T. (Guilty Plea), 2/13/12, at 89-90. She further admitted that upon being arrested, she admitted some involvement in translating and picking up drug proceeds. **Id**. at 90.

(PCRA), 6/3/16, at 9.[5] We also note that counsel, who the trial court found to be credible, testified that he was sure he went through the sentencing guidelines with her, as that was his practice, although he could not recall specifically doing so. *Id*. at 34. Finally, counsel testified that he believed Appellant was aware that the Attorney General's office was not going to "be friendly" with her due to her failure to fully cooperate. *Id*. Appellant's statement given during her colloquy evidenced that her plea was entered knowingly, intelligently, and voluntarily.

We also find that counsel's advice was "within the range of competence demanded of attorneys in criminal cases." *Hickman*, 799 A.2d at 141. At the PCRA hearing, counsel testified regarding the advice he gave Appellant and why:

> I said because you had cooperated and because already you had essentially advised the agents of [the Attorney General] of her role in the offense and that she had already actually picked up money, I said "you have already implicated yourself to such an extent that it would be foolhardy -- to go the other way and try to fight this case."
>
> In addition, after I received some discovery and some tapes which she conceded was her on the tapes -- there weren't many. But she conceded that that was her voice and what was her and that was her talking, that it really would be difficult for us to win the case. And the calls came from her home phone number.

---

[5] At one point during the PCRA hearing, Appellant testified that the Attorney General's office told her that if she cooperated with it, she would be fined and receive no jail time. N.T. (PCRA), 6/3/16, at 10. When the court asked if that statement was different than what she said during her plea, she said she could not recall and then agreed that there was nothing on the record at the time of sentencing regarding any specific deal or agreement.

> There was a wiretap, extensive wiretap by [BNIDC], and it would be foolhardy to go trial, and that she could get a really lengthy sentence given the nature of this crime.

N.T. (PCRA), 6/3/16, at 27-28. Counsel also testified that prior to the plea agreement, the Commonwealth became aware of the fact that Appellant was not fully cooperating. *Id*. at 33.[6]

---

[6] In its opinion, the PCRA court set forth the following discussion of Appellant's cooperation:

> To the extent [Appellant] actually cooperated, the court noted that her minimal cooperation was already taken into account in the plea negotiation. Moreover, … [Appellant's] cooperation was largely, if not wholly, illusory. While assisting in the arrest of one already identified "mid-level dealer," [Appellant], positioned at the top of the organization, lied about her own participation in and knowledge of the drug operation. During the course of her alleged cooperation, [Appellant] denied that her voice was captured during one of her electronically intercepted telephone calls and denied that she knew that the organization was distributing heroin. *N.T. 6/18/12, p. 7*. While [Appellant] claimed to be trying to assist agents with locating the head of the organization, her boyfriend, [Valdez-Cordero], she was, in fact, not only concealing his whereabouts, but she continued to assist him in his drug distribution efforts. Despite her claim that she had not been in contact with [Valdez-Cordero, Appellant] had telephone contact with him throughout the entire summer. [Appellant] gave [Valdez-Cordero's] telephone number to another co-defendant so that he could purchase more heroin. [Valdez-Cordero] was only apprehended after another co-defendant in the case gave that telephone number to the investigators. *N.T. 6/18/12, p. 8.*

PCRA Opinion, 5/18/20, at 4 (citing Trial Court Direct Appeal Opinion, 10/5/12, at 8-9).

Although Appellant is not pleased with her sentence, she has failed to show that her plea was entered involuntarily or unknowingly or proven that she has suffered prejudice. At the time of her arrest, Appellant was charged with Possession with Intent to Deliver Heroin, Conspiracy to Deliver Heroin, two counts of Corrupt Organizations, and four counts of Criminal Use of a Communication Facility. Appellant made numerous inculpatory statements to agents of the Commonwealth. Given the information and overwhelming evidence that the Commonwealth had amassed against her, we conclude that counsel's advice that Appellant enter a guilty plea was within the standard of competence required by the Sixth Amendment, and Appellant is due no relief.[7]

In support of her second issue, Appellant avers that her plea was involuntary because the Commonwealth breached the plea agreement when it played a tape of Appellant that she alleges "inflamed the Judge to give a maximum sentence, rather than a mitigating sentence."[8] Appellant's Brief at

---

[7] In addition to failing to establish prejudice as set forth in **Hickman**, we find, as the PCRA court found it its opinion, Appellant has failed to show that counsel did not have a reasonable basis for advising Appellant she should enter a plea. Thus, Appellant has also failed to satisfy the second prong of our ineffectiveness test. **Charleston**, 94 A.3d at 1019.

[8] In the tape, Appellant had the following conversation with Ballard, a co-defendant in the case:

> [Appellant]: "Don't make me take my belt and whip it right across your face. You're worse than a kid. I always gotta be telling you shit and you never understand."

32. Preliminarily, we find Appellant has waived this issue for failing to raise it on direct appeal. *Commonwealth v. Rachack*, 62 A.3d 389, 391 (Pa. Super. 2012) ("While Appellant focuses on the voluntariness of his guilty plea, that issue should have been raised on direct appeal; it was not. Therefore the issue is waived.") (footnote omitted); 42 Pa.C.S. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal[,] or in a prior state postconviction proceeding"). In the instant case, Appellant filed a Motion for Modification of Sentence on June 28, 2012, and a direct appeal, *Rosa*, 2085 EDA 2012. Appellant did not raise the issue of the Commonwealth's alleged breach of the plea agreement at that time; thus, it is waived.

Even if we did not find waiver, the issue is of no merit. In her brief, Appellant states that there was an agreement between the parties that implied Appellant would be sentenced within the guidelines and that by playing the

---

Ballard: "I understand you crazy."

[Appellant]: "No you don't cause I aint taking shit from nobody. Fuck that shit. If I get locked up I get locked up for what I'm doing for me not what I'm doing for you."
*N.T. 6/18/12 pp. 10-14; Exhibit C-1.*

PCRA Opinion, 5/18/20, at 3-4 (citing Trial Court Direct Appeal Opinion, 10/5/12, at 7-8).

tape, the prosecutor violated that agreement. Appellant's Brief at 37. Appellant relies on **Commonwealth v. Alvarado**, 276 A.2d 526 (Pa. 1971), wherein the Pennsylvania Supreme Court found that the Commonwealth breached its promise not to seek the death penalty as part of its plea agreement. The Court held that although the Commonwealth did not specifically urge or seek the death penalty, when asked prior to sentencing if the Commonwealth had any comments to offer on the question of sentence, which was between life imprisonment or death, the Commonwealth made a series of statements relating to, *inter alia*, Appellant's deception following the crime, his lack of remorse, and the vicious nature of the crime. **Id**. at 529. The Court found that "the only conceivable purpose of the references to the brutal nature of the crimes and [the appellant's] apparent remorselessness was to persuade the court to assign the harsher of the two possibilities." **Id**.

In the instant case, there was no agreement with the Commonwealth regarding sentencing. At Appellant's guilty-plea hearing, the Commonwealth stated as follows:

> Commonwealth: In [Appellant's] case, 6544 of 2011, it is a negotiated plea [Appellant] will be entering a guilty plea to counts 2, 4, and 7.
> Count 2, criminal conspiracy to deliver; Count 4, corrupt organizations; and Count 7, criminal use of a communication factiilty.
>
> * * *
>
> Commonwealth has already signed the nol pros for the other counts, your honor on the Criminal Information.
>
> The Court: Okay.

- 15 -

Commonwealth: There is an agreement -- actually this will be an open plea to the above counts, 2, 4 and 7. They are non-mandatory counts. **There is no agreement on sentencing.** [Appellant] will be RRRI eligible. [Appellant] will make herself available to the Commonwealth and, if called, testify truthfully at all future proceedings. And we expect deferred sentencing.

The Court: Okay.

The Commonwealth: Other than the stated, **there are no other agreements with Erika Rosa**.

N.T. (Guilty Plea), 2/13/12, at 22-23 (emphases added). Although Appellant avers that the Commonwealth breached the plea agreement by playing the tape, there was no agreement regarding sentencing and, therefore no agreement was breached.

Order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/21

- 16 -